**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| SHAWN VAN ASDALE, an individual, and LENA VAN ASDALE, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> INTERNATIONAL GAME, TECHNOLOGY, a Nevada corporation, <br><br> Defendants. | 3:04-CV-703-RAM <br><br> **MEMORANDUM DECISION AND ORDER** |

Before the court is Plaintiffs' Motion for Certification to the Nevada Supreme Court and/or for Reconsideration (Doc. #237.)[1] Defendant has opposed (Doc. #241), and Plaintiffs have replied (Doc. #243). Also before the court is Defendant's Motion to Strike Jury Demand. (Doc. #240.) Plaintiffs have opposed (Doc. #242), and Defendant has replied (Doc. #244). The third motion before the court is Plaintiffs' Motion to Retax Costs and Fees. (Doc. #161). Defendant has opposed (Doc. #164), and Plaintiffs have replied (Doc. #165). After a thorough review, the court denies Plaintiff's Motion for Certification to the Nevada Supreme Court and/or for Reconsideration. The court grants Defendant's Motion to Strike Jury Demand. The court grants in part and denies in part Plaintiffs' Motion to Retax Costs and Fees.

## I. BACKGROUND

Plaintiffs Shawn and Lena Van Asdale[2] are former corporate counsel for Defendant,

---

[1] Refers to the court's docket number.

[2] The court will refer to the Van Asdales collectively as Plaintiffs and individually by their first names.

International Game Technology (IGT). (Pls.' Compl. 4 (Doc. #3).) Plaintiffs bring this action against Defendant for their dismissals, which they allege were done in retaliation for Plaintiffs' protected activity of reporting suspected IGT shareholder fraud to federal authorities. (*Id.* at 3.) Plaintiffs' complaint alleges that Defendants are liable to them under the Sarbanes-Oxley Act (SOX) and for the Nevada state torts of tortious discharge, intentional interference with contractual relations, and intentional infliction of emotional distress. (*Id.* at 14-20.)

On June 13, 2007, this court entered an order (Doc. #197) granting Defendant's Motion for Summary Judgment. The court granted summary judgment on Plaintiffs' SOX claims, declined to retain jurisdiction over Plaintiffs' state law claims, and dismissed Plaintiffs' state law claims without prejudice. (*Id.*) On appeal, the Ninth Circuit reversed the court's grant of summary judgment on Plaintiffs' SOX claims, vacated the dismissal of Plaintiffs' state law claims, and remanded for the court to consider Plaintiffs' state law claims in the first instance. (Doc. #220.)

On December 8, 2009, the court entered an order (Doc. #235) granting in part and denying in part Defendant's Motion for Summary Judgment as to Plaintiffs' state law claims. (Doc. #173). In that order, the court granted summary judgment on Plaintiffs' state law claims for tortious discharge, intentional interference with contractual relations, and intentional infliction of emotional distress. (Doc. #235) The court denied summary judgment on application of the after-acquired evidence doctrine. (*Id.*)

## II. DISCUSSION

**A.   MOTION FOR CERTIFICATION TO THE NEVADA SUPREME COURT**

In its order issued December 8, 2009, the court granted summary judgment on Plaintiffs' claims for tortious discharge because Plaintiffs failed to report alleged illegal activity externally as required by *Wiltsie v. Baby Grand Corp.*, 105 Nev. 291, 774 P.2d 432 (1989). (Doc. #235 at 7.) Based on the court's reliance on *Wiltsie,* Plaintiffs argue that the court should certify the following question to the Nevada Supreme Court:

Whether the holding in *Wiltsie v. Baby Grand Corp.*, 105 Nev. 291, 774 P.2d

2

>432 (1989) to the effect that a "whistleblower" must expose an employer's illegal activity to the proper authorities, not merely to a supervisor, in order to be entitled to protection for whistleblowing, is no longer controlling precedent in light of the abrogation of *Zaniecki v. P.A. Bergner & Co.*, 493 N.E. 2d 419 (Ill.App. 1986), the case on which it relies.

(Pls.' Mot. for Certification 1-2 (Doc. #237).)

Defendant contends that there is no basis for this court to certify a settled question of Nevada law to the Nevada Supreme Court. (Def.'s Opp'n to Certification 2 (Doc. #241.) According to Defendant, Plaintiffs' request fails to satisfy the standard for certification under Rule 5 of the Nevada Rules of Appellate Procedure. (*Id.*)

Under the Nevada Rules of Appellate Procedure:

>The Supreme Court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States or of the District of Columbia, a United States District Court, or a United States Bankruptcy Court when requested by the certifying court, if there are involved in any proceeding before those courts questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of this state.

Nev. R. App. P. 5(a). The Nevada Supreme Court will consider a certified question when its answers may be determinative of part of a federal case, there is no controlling Nevada precedent, and the answer will help settle important questions of law. *Volvo Cars of N. Am., Inc. v. Ricci*, 137 P.3d 1161, 1164 (Nev. 2006). Certification is not mandatory where state law is unclear on a particular issue. *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). Typically, a federal court's task when confronting an issue of state law that the state's high court has not addressed is to predict how the state's highest court would decide the issue. However, "[w]hen interpreting state law, federal courts are bound by decisions of the state's highest court." *Arizona Elec. Power Coop. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995). Only "in the *absence of such a decision*" must "a federal court . . . predict how the highest state court would decide the issue . . . ." (*Id.*) (emphasis added). "[F]ederal courts look to existing state law *without predicting potential changes in that law*." *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002) (emphasis added).

3

Here, controlling Nevada precedent exists – the Nevada Supreme Court's decision in *Wiltsie*. Plaintiffs assert that because *Wiltsie* relied almost exclusively on an Illinois Appellate Court decision that was later overruled and abrogated, the controlling value of *Wiltsie* is called into question. (Pls.' Mot. for Certification 3.) The Nevada Supreme Court may decide to revisit its holding in *Wiltsie* in the future. However, currently, this court is bound by the Nevada Supreme Court's decision in *Wiltsie*. Because there is not an absence of controlling Nevada precedent on the elements necessary to sustain a claim for tortious discharge, certification is not appropriate. Morever, "[w]hen a party requests certification for the first time after losing on the issue, that party must show 'particularly compelling reasons' for certifying the question." *Carolina Cas. Ins. Co. v. McGhan*, 572 F. Supp. 2d 1222, 1226 (D. Nev. 2008). "[A] federal court may consider the timing of the certification, and whether certification will achieve savings to time, money, and resources or promote cooperative judicial federalism." In this case, Plaintiffs request certification after the court's grant of summary judgment in favor of Defendant on their tortious discharge claims. Additionally, Plaintiffs declined to request certification in 2007 when the court first considered Defendant's motion for summary judgment. Under these circumstances, certification would not save time, money, or resources, but would likely result in considerable delay. Therefore, the court denies Plaintiffs' motion for certification to the Nevada Supreme Court.

**B.    MOTION FOR RECONSIDERATION**

In the alternative to certification to the Nevada Supreme Court, Plaintiffs request the court reconsider its grant of summary judgment on Plaintiffs' tortious discharge claims. (Pls.' Mot. for Certification 6.) Defendant argues that none of the grounds for reconsideration is applicable in this case. (Def.'s Opp'n to Certification 2.)

Under Fed. R. Civ. P. 59(e) a district court may reconsider and amend a previous order. However, this is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003)(internal quotations omitted). Absent "highly unusual circumstances" a motion for

4

reconsideration may only be granted where one of three circumstances is present: (1) the court made manifest errors of law or fact upon which the judgment is based, (2) there is newly discovered evidence or previously unavailable evidence, or (3) there is an intervening change in the controlling law. *Id*. "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Id*.

Here, Plaintiffs do not specifically indicate that one of the three above enumerated circumstances exist warranting reconsideration. Plaintiffs contend that because the Illinois case upon which *Wiltsie* relied was abrogated, the court should anticipate that the Nevada Supreme Court would abrogate *Wiltsie* in the same way. (Pls.' Mot. for Certification 6.) The Illinois case to which Plaintiffs point, *Zaniecki v. P.A. Bergner &Co.*, 493 N.E.2d 419 (Ill. App. 1986), was abrogated in 1999 by *Lanning v. Morris Mobile Meals, Inc.*, 720 N.E.2d 1128 (Ill. App. 1999). At bottom, Plaintiffs are simply arguing in their motion for reconsideration the same point they raised in their opposition to summary judgment. In the instant motion, Plaintiffs rely on authority in existence when they made their initial argument that the court should abrogate *Wiltsie*. Because Plaintiffs fail show that circumstances exist warranting reconsideration of the court's order, and merely resurrect an argument already presented to the court, the court denies Plaintiffs' motion for reconsideration.

**C.    MOTION TO STRIKE JURY DEMAND**

Defendant argues that Plaintiffs' jury demand should be stricken on their remaining cause of action under the Sarbanes-Oxley Act (SOX), 18 U.S.C. § 1514A. (Def.'s Mot. to Strike 1 (Doc. #240).) Defendant asserts that there is no right to jury trial under SOX. (*Id*.)

Plaintiffs contend that the statutory text of SOX provides a right to jury trial and that the Ninth Circuit arguably presumed that SOX claims may be adjudicated by a jury. (Pls.' Opp'n to Mot. to Strike 2-7 (Doc.#242).)

Fed. R. Civ. P. 39 provides in relevant part:

When trial by jury has been demanded under Rule 38, the action must be

5

> designated on the docket as a jury action. The trial of all issues so demanded shall be by jury, unless . . . the court, on motion . . . finds that on some or all of those issues there is no federal right to a jury trial.

At issue in this case is whether Plaintiffs are entitled to a jury trial on their § 1514A claim. "[B]efore inquiring into the applicability of the Seventh Amendment, [the court] must 'first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'" *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999) (quoting *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345 (1998)).

This is an issue of first impression in this district. No circuit courts, including the Ninth Circuit, have addressed the issue, and few other district courts have addressed the issue.[3]

1. Whether the Ninth Circuit Addressed the Right to a Jury Trial

Before considering the statutory language of SOX, the court addresses Plaintiffs' argument that the Ninth Circuit has arguably presumed that SOX claims may be adjudicated by a jury. (Pls.' Opp'n to Mot. to Strike 6-7.) Plaintiffs assert that when this case was before the Ninth Circuit the court twice referred to "a jury." (*Id.* at 6.) Plaintiffs point to two passages in the Ninth Circuit's decision: "A jury could find Shawn's account not credible, and "By contrast, the district court held that no reasonable jury could find that Lena subjectively believed that shareholder fraud had occurred." (*Id.* (citing *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1000, 1002 (9th Cir. 2009). These two references to a "jury," however, appear in the context of explaining the summary judgment standard and do not amount to any indication by the Ninth Circuit that a right to a jury trial exists under SOX. Thus, the court turns to analyzing the language of SOX.

---

[3] Four courts have directly considered whether there is a right to jury trial: *Jones v. Home Fed. Bank*, 2010 U.S. Dist. LEXIS 3579, 2010 WL 996476 (D. Idaho Jan. 14, 2010); *Schmidt v. Levi Strauss & Co.*, 621 F. Supp. 2d 796, 798 (N.D. Cal. 2008); *Walton v. Nova Info. Sys.*, 514 F. Supp. 2d 1031, 1033 (E.D. Tenn. 2007); *Murray v. TXU Corp.*, 2005 U.S. Dist. LEXIS 10945, 2005 WL 1356444 (N.D. Tex. June 7, 2005). Two other courts have denied without prejudice motions to strike jury demands because of the uncertainty in the law: *Fraser v. Fiduciary Trust Co. Int'l*, 417 F.Supp.2d 310, 325 (S.D.N.Y. 2006); *Hanna v. WCI Communities, Inc.*, 348 F. Supp. 2d 1332, 1334 (S.D. Fla. 2004).

### 2. Section 1514A of the Sarbanes-Oxley Act

Section 1514A provides "[w]hilsteblower protection for employees of publicly traded companies." No company subject to the act "may discharge, demote, suspend, threaten, harass, or . . . discriminate against an employee . . . because of any lawful act by the employee" to provide information relating to fraud against shareholders or to participate in a proceeding relating to fraud against shareholders. 18 U.S.C. § 1514A(a). "A person who alleges discharge or other discrimination . . . in violation of subsection (a) may seek relief under subsection (c), by: (1) filing a complaint with the Secretary of Labor; or (2) "if the Secretary has not issued a final decision within 180 days of the complaint . . . bringing an action at law or equity for de novo review in the appropriate district court of the United States." 18 U.S.C. § 1514A(b).

The remedies provision of section 1514A provides:

> (1) In general. An employee prevailing in any action under subsection (b)(1) shall be entitled to all relief necessary to make the employee whole.
> (2) Compensatory damages. Relief for any action under paragraph (1) shall include--
>  (A) reinstatement with the same seniority status that the employee would have had, but for the discrimination;
>  (B) the amount of back pay, with interest; and
>  (C) compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees.

18 U.S.C. § 1514A(c).

### 3. Statutory Construction

Defendant argues that nothing in the language of SOX provides a right to a jury or indicates any intent by Congress to create a right to a jury trial for a SOX claim. (Def.'s Mot. to Strike 2.) Plaintiffs contend that the statutory text of SOX provides a right to jury trial. (Pls.' Opp'n to Mot. to Strike 2-6.) Plaintiffs primarily argue that the statutory language "all relief necessary to make the employee whole" supports classifying the damages under SOX as "restitutionary," which makes them legal rather than equitable in nature. (Pls.' Opp'n to Mot. to Strike 3-6.) According to Plaintiffs, none of the other district courts that concluded that the statutory text of § 1514A failed to imply a statutory jury right addressed this language. (*Id.* at

7

3.)

In *Walton v. Nova Info. Sys.*, 514 F. Supp. 2d 1031, 1034 (E.D. Tenn. 2007), the court specifically addressed the statutory language in SOX stating that back pay is a remedy intended to "make the employee whole." The court stated:

> Courts have held that the intended purpose of such remedies are restitutionary in nature. *See Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 879 (2nd Cir. 1988) (holding that the purpose of a restitutionary action under the Fair Labor Standards Act is to make whole employees); *Musmeci v. Schwegmann Giant Super Markets*, 159 F.Supp.2d 329, 355 n. 26 (E.D. La. 2001) (holding that a monetary award to make a plaintiff whole under an ERISA plan is restitutionary). Thus, since the back pay damages under the remedies provision of the Sarbanes-Oxley Act are restitutionary damages intended to "make the employee whole," such damages are equitable in nature, not legal, and do not give Plaintiff the right to a jury trial.

*Id.*

In *Schmidt v. Levi Strauss & Co.*, 621 F. Supp. 2d 796, 804 (N.D. Cal. 2008), the court found that the remedies enumerated in the SOX remedy provision "all appear to be costs that the plaintiffs would be 'out-of-pocket' because of the alleged wrongful discharge and which must be reimbursed to plaintiffs in order to 'make them whole.' They do not represent discretionary monetary relief which, by contrast, would be tried before a jury."

Thus, both *Walton* and *Schmidt* addressed the very statutory language to which Plaintiffs point and considered the language in concluding that the relief provided by SOX is equitable in nature and does not give rise to the right to a jury trial. This court agrees with the reasoning of *Walton* and *Schmidt* and concludes that the statutory text of section 1514 A does not imply a statutory jury right.[4]

   4.   Seventh Amendment

Defendant argues that there is no Seventh Amendment right to a jury trial for SOX claims. (Def.'s Mot. to Strike 3.) Plaintiff's offer no opposition to Defendant's argument.

///

---

[4] Plaintiffs do not argue that SOX creates an express right to a jury trial. Nevertheless, the court concludes that none exists. See *Walton*, 514 F. Supp. 2d at 1035 (E.D. Tenn. 2007) (concluding after looking at the text of SOX that "no express right exists within the statute").

8

The Seventh Amendment provides as follows:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.

U.S. Const. amend VII. In conducting its Seventh Amendment analysis, a court first "compare[s] the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Tull v. United States*, 481 U.S. 412, 417 (1987). Second, the court "examine[s] the remedy sought and determine[s] whether it is legal or equitable in nature. *Id*. "The second stage of [the Seventh Amendment] analysis is more important than the first." *Granfinanciera v. Nordberg*, 492 U.S. 33, 42 (1989). If both factors weigh in favor of finding an entitlement to a jury trial, the court considers "whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder." *Id*.

In *Schmidt*, the court conducted a thorough analysis under the Seventh Amendment rubric in concluding that there is no right to a jury trial. First, the *Schmidt* court found that a SOX claim is analogous to a claim of wrongful discharge, which existed at common law. *Schmidt*, 621 F. Supp. 2d at 801. The court determined that a wrongful discharge claim sounds in tort and gives rise to the constitutional right to jury trial. *Id*. Second, the court concluded that the nature of the remedy under SOX is restitutionary and equitable. *Id*. at 802-06. The court reasoned that: (1) remedies of reinstatement, hiring and back pay are generally equitable remedies; (2) the purpose of section 1514A's remedial provisions is restitution rather than compensation; and (3) the monetary awards provided to the prevailing employee under section 1514A appear to be restitutionary in nature or otherwise intertwined with the injunctive relief. *Id*. Furthermore, the court noted that its finding was consistent with the reasoning of the *Murray* court, which analogized the remedies offered by section 1514A to those offered by Title VII prior to the 1991 amendments that the Supreme Court interpreted as equitable in nature. *Id*. at 805. Last, the *Schmidt* court determined that even if the first two factors of the Seventh

9

Amendment analysis weighed in favor of right to jury trial, no right to a jury trial exists because Congress expressly assigned the right to adjudicate a SOX claim to the Secretary of Labor, a non-Article III tribunal. *Id*. at 806.

The court finds the thorough analysis and logic of the *Schmidt* court persuasive and adopts its reasoning. Therefore, the court strikes Plaintiffs jury demand under the Sarbanes-Oxley Act.

5.  Advisory Jury

Plaintiffs argue that in the event that the court determines that the statutory text does not imply a right to a jury trial, it should nonetheless empanel an advisory jury. (Pls.' Opp'n to Mot. to Strike 7.)

Under FRCP 39(c)(1), in an action not triable by right to a jury the court "may try any issue with an advisory jury[.]" If an advisory jury is empaneled, the court is free to accept or reject the advisory jury's findings, in whole or in part, and is obligated to make its own independent assessment of the issues submitted to the advisory jury. *Ashland v. Ling-Temco-Vought, Inc.*, 711 F.2d 1431, 1438 (9th Cir. 1983); *see also OCI, Wyoming v. PacifiCorp*, 479 F.3d 1199, 1206 (10th Cir. 2007). "While the district court may exercise its discretion to accept or reject the advisory jury's verdict, the advisory jury's decision is not binding on the district court and the district court has the 'ultimate responsibility' for deciding the case's legal and factual issues." *OCI, Wyoming*, 479 F.3d at 1206 (citations omitted). The Court still is required to make its own findings of fact and conclusions of law under Fed. R. Civ. P. 52(a). *Id*. at 1205-06.

Defendant contends that an advisory jury should not be used in this because: (1) it would increase the burden on the parties and the court by needlessly complication the trial of this case; (2) an advisory jury imposes a burden on jurors whose ultimate decision may not matter; (3) the court is well positioned to be the most informed trier-of-fact; and (4) an advisory jury would increase the risk of disclosure of Defendant's privileged information. (Def.'s Mot. to Strike 8.)

The court agrees with Defendant's position and declines to exercise its discretion to

empanel an advisory jury.

### D.   MOTION TO RETAX COSTS AND FEES

In a hearing held September 22, 2006, the court granted Defendant's Motion for Terminating Sanctions Against Plaintiffs to the extent that Plaintiffs were sanctioned in the amount of Mr. Krischer's "attorney's fees in preparing [the] motion and his travel costs for attending [the motion] hearing." (Doc. #149 at 2.) Defendant submitted a statement of fees and costs indicating that a total of $39,201.18 was incurred in bringing the motion for terminating sanctions. (Doc. #158 at 2.) Plaintiffs argue that Defendant's statement of fees and costs is not in compliance with the court's order and that the claimed fees are excessive in this jurisdiction. (Pl.'s Mot. to Retax 1 (Doc. #161.)

First, Plaintiffs argue that Defendant's statement is not in compliance with the court's order because the sanction issued by the court was only to be in the amount of Mr. Krischer's attorney's fees and costs, and not those of any other attorney. (Pls.' Mot. to Retax 2.)  The court recognizes that its order is open to Plaintiffs' interpretation.  However, the court clarifies that its order allows for sanctions in the amount of Mr. Krischer's individual attorney's fees as well as his associates' attorneys' fees in preparing the motion.  Thus, Defendant's statement of fees and costs will not be reduced for this reason.

Second, Plaintiffs contend that Defendant's statement of fees and costs is excessive and should be reduced so that the total sanction against Plaintiffs is in the amount of $2,000. (*Id.* at 3-4.)

Once a party has established that it is entitled to an award of attorneys' fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (*quoting Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). Under federal law, reasonable attorneys' fees are generally based on the traditional "lodestar" calculation set forth in *Hensley*.  *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433.  Second, the court must

11

decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. *See Fischer*, 214 F.3d at 1119 (citation omitted).

The *Kerr* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70. Factors one through five have been subsumed in the lodestar calculation. *See Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996). Further, the Ninth Circuit, extending *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992), held that the sixth factor, whether the fee is fixed or contingent, may not be considered in the lodestar calculation. *See Davis v. City & County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993). To calculate the lodestar figure, a party must submit "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984).

Defendant requests the following lodestar amount for work it asserts is compensable under the terms of the court's order:

| **ATTORNEY** | **HOURS** | **RATE** | **LODESTAR** |
|---|---|---|---|
| Gordon E. Krischer | 14.5 | $735 | $10,657.50 |
| Mark W. Robertson | 24.3 | $495 | $12,028.50 |
| Ryan W. Rutledge | 28.5 | $410 | $11,685.00 |
| David M. Booher | 12.7 | $340 | $4,318 |
| | | | |
| **Total Requested Lodestar** | **$38,689** | | |

12

(Doc. #158 at 5.) All four individuals are attorneys at O'Melveny & Meyers, LLP. Mr. Krischer is a partner and has been practicing labor and employment law for more than thirty years. (*Id.* at 3.) Mr. Robertson is an attorney who has practiced labor and employment law since 1998. (*Id.* at 3.) Mr. Rutledge is an attorney who has practiced labor and employment law since 2002. (*Id.*) Mr. Booher is an attorney who has practiced labor and employment law since 2004. (*Id.*)

1. <u>Reasonable Hourly Rate</u>

In determining whether an hourly rate is reasonable, the court considers the experience, skill, and reputation of the attorney requesting fees. *See Webb v. Ada County*, 285 F.3d 829, 840 n.6 (9th Cir. 2002). The reasonable hourly rate should reflect the prevailing market rates in the community. *See id.*; *see also Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992), *as amended on denial of reh'g*, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district").

In addition to their own statements, attorneys are required to submit additional evidence that the rates charged are reasonable. *See Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987). Here, Defendant submits only the declaration of Mr. Krischer to establish that the rates charged by the four attorneys are reasonable. Defendant has not, however, provided the court with any declarations from lawyers not associated with this case. *See, e.g., United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate"). "When a fee applicant fails to meet its burden of establishing the reasonableness of the requested rates . . . the court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community." *Bademyan v. Receivable Mgmt. Servs. Corp.*, 2009 U.S. Dist. LEXIS 21923, at *15, 2009 WL 605789, at *5 (C.D. Cal. Mar. 9, 2009).

In this case, based on the court's knowledge of the prevailing rates in the community and a review of the submissions in this case, the court finds that the requested hourly rates are

13

excessive. Although all four attorneys, who practice in Los Angeles, may command the hourly rates submitted in that community, reasonable attorney rates in the District of Nevada are significantly lower. The court concludes that the following rates are reasonable for each of the attorneys based on its familiarity with prevailing market rates in the District of Nevada:

- Mr. Krischer - $500 per hour
- Mr. Robertson – $275 per hour
- Mr. Rutledge – $250 per hour
- Mr. Booher – $250 per hour

2. <u>Hours Reasonably Expended</u>

At the outset, "[t]he fee applicant bears the burden of documenting the appropriate hours expended in litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). A court must guard against awarding fees and costs which are excessive, and must determine which fees and costs were self-imposed and avoidable. *INVST Fin. Group v. Chem-Nuclear Sys.*, 815 F.2d 391, 404 (6th Cir. 1987)). A court has "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Soler v. G & U, Inc.*, 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992) (citation omitted). Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated. *See Gates*, 987 F.2d at 1399 (quoting *Hensley*, 461 U.S. at 433-34).

Here, the court finds that the number of requested hours is excessive. Given the high number of hours expended in preparation of Defendant's Motion for Termination Sanctions, the court takes note of the skyrocketing litigation costs with which parties are burdened. Based on its experience and upon reviewing the submissions in this case, the court concludes that a reasonable amount of time for preparation of the relevant motion amounts to approximately forty percent of counsels' submitted hours. Specifically, the court finds that the time Mr. Krischer spent arguing the motion was reasonably necessary. Three motions were argued at the September 22, 2006, hearing, which lasted for one hour and fifty-one minutes. (Doc. #149.) By dividing the total hearing time by three, Mr. Krischer would have spend thirty-seven minutes

arguing the motion for terminating sanctions. Thus, at an hourly rate of $500, Defendant reasonably incurred $308.33 in attorney's fees for the hearing. The remainder of the attorneys' submitted hours are reduced. The court concludes that the hours reasonably expended by each attorney are forty percent of the submitted hours,[5] which amount to the following:

- Mr. Krischer – 5.52
- Mr. Robertson – 9.72
- Mr. Rutledge – 11.4
- Mr. Booher – 5.08

3. Total Lodestar Award

Based on the foregoing, the court finds that the appropriate award of attorneys' fees is as follows:

| ATTORNEY | HOURS | RATE | LODESTAR |
|---|---:|---:|---:|
| Gordon E. Krischer | 5.52 | $500 | $2,760 |
| Gordon E. Krischer (hearing) | .61 | $500 | $308.33 |
| Mark W. Robertson | 9.72 | $275 | $2,673 |
| Ryan W. Rutledge | 11.4 | $250 | $2,565 |
| David M. Booher | 5.08 | $250 | $1,143 |
|  |  |  |  |
| **Total Lodestar** | **$9,449.33** |  |  |

4. Total Attorneys' Fees and Costs Award

Pursuant to the court's order, Defendant is entitled to Mr. Krischer's reasonable costs for traveling to and attending the motion hearing. Defendant seeks $512.18, which includes Mr. Krischer's airfare to and from Reno, his hotel room, and the cost of cab rides to and from the airport. The court finds that these costs were reasonably necessary and will award Defendant costs in the amount of $512.18.

---

[5] To calculate Mr. Krischer's hours, the court subtracted the time spent at the hearing from Mr. Krischer's submitted hours, and then calculated forty percent of that number.

15

Therefore, the court awards Defendant $9,449.33 in attorneys' fees and $512.18 in costs, for a total award of $9,961.51. The court orders Plaintiffs to pay this amount to Defendant by no later than thirty (30) days from the date of this order.

### III. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Certification and/or Reconsideration (Doc. #188) is **DENIED**.

**IT IS HEREBY ORDERED** that Defendant's Motion to Strike Jury Demand (Doc. #240) is **GRANTED**.

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Retax Costs and Fees (Doc. #161) is **GRANTED** in part and **DENIED** in part as detailed above.

DATED: April 13, 2010.

_____
UNITED STATES MAGISTRATE JUDGE