**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| SHAWN VAN ASDALE, an individual, and LENA VAN ASDALE, an individual ) ) ) | 3:04-CV-703-RAM |
| Plaintiffs, ) | **ORDER** |
| vs. ) ) | |
| INTERNATIONAL GAME, TECHNOLOGY a Nevada corporation, ) ) | |
| Defendant. ) | |

On October 22, 2009, the court ordered counsel for both parties to review the privilege logs and submit a list of documents and docket numbers that should remain under seal in this case. (Doc. #233.) Plaintiffs responded to the court's order and argue that no documents or docket numbers should remain under seal. (Doc. #238.) Defendant moves the court to maintain a particularized list of documents under seal. (Doc.#239.) After a thorough review, the court grants Defendant's motion.

## I. BACKGROUND

Plaintiffs Shawn and Lena Van Asdale[1] are former corporate counsel for Defendant, International Game Technology (IGT). (Pls.' Compl. 4 (Doc. #3).) Plaintiffs bring this action against Defendant for their dismissals, which they allege were done in retaliation for Plaintiffs' protected activity of reporting suspected IGT shareholder fraud to federal authorities. (*Id.* at 3.) On December 1, 2004, Plaintiffs moved for leave to file the complaint under seal due to the existence of attorney-client communications and/or attorney work product within the factual

---

[1] The court will refer to the Van Asdales collectively as Plaintiffs and individually by their first names.

1   allegations of the complaint.  (Doc. #2.)  On December 2, 2004, the court granted Plaintiffs'

2   motion.  (Doc. #7.)  Since that date, all documents in this case have been filed under seal.

3   Additionally, on November 6, 2006, the court approved a stipulation and protective order

4   entered into by the parties.  (Doc. #170.)  The protective order applies "to all information,

5   materials, or things subject to discovery in this action . . . ."  (Doc. #170 at 1-2.)  The protective

6   order's protections cover:

7           Confidential Information . . . [and] . . . any information copied or extracted
            thereform, as well as all copies, excerpts, summaries, or compilations thereof,
8           plus testimony, conversations, or presentations by Parties or counsel in any
            settings that might reveal, or otherwise disclose Confidential Information
9           since the commencement of this action.

10  (*Id*. at 2.)  "Confidential Information" is defined as "[a]ll information, materials, and things

11  that each Party has produced to the other in this action since the commencement of this action

12  . . . [and includes] any information or documents designated by a third party pursuant to the

13  terms of this Protective Order."  (*Id*.)

14          In light of *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006),

15  the court believes the scope of the sealing order should be revisited.

16                              **II. LEGAL STANDARD**

17          Open access to the courts is an important aspect of the United States legal system.

18  *Phoenix Newspapers Inc. v. U.S. Dist. Court*, 156 F.3d 940, 946 (9th Cir. 1998). In the spirit

19  of open access, "the courts of this country recognize a general right to inspect and copy public

20  records and documents, including judicial documents and records."  *Nixon v. Warner*

21  *Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). A strong presumption favors access unless a

22  particular court record is one traditionally kept secret, such as grand jury transcripts and

23  certain warrant materials. *Kamakana v. City of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006);

24  *Foltz v. State Farm Mutual Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).

25          If a court record is not one that has traditionally been kept secret, one of two standards

26  determine whether the presumption of public access may be overcome.  *Kamakana*, 447 F.3d

27  at 1178.  For dispositive motions, a party seeking to seal a judicial record bears the burden of

28                                        2

overcoming the presumption of public access by meeting the "compelling reasons" standard. *Id*. 1178-79. To meet this standard, a party must articulate "compelling reasons supported by specific factual findings [.]" *Id*. at 1179 (citations and internal quotations omitted). Generally, a "compelling reason" exists when court files have "become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id*. (citing *Nixon*, 435 U.S. at 598.) In assessing whether to seal a dispositive motion, the court must "conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id*. (citations, internal quotations, and modifications omitted). If the court decides to seal a dispositive motion, it must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id*. (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)).

On the other hand, for non-dispositive motions, a party seeking to seal a judicial record must meet the "good cause" standard. *Kamakana*, 447 F.3d at 1179. Because non-dispositive motions are often "unrelated, or only tangentially related to the underlying cause of action[,]" the "public policies that support the right of access to dispositive motions . . . do not apply with equal force to non-dispositive materials." *Id*. (citations and internal quotations omitted). Therefore, a "particularized showing under the 'good cause' standard of [Fed. R. Civ. Pro 26(c)] will suffice to warrant preserving the secrecy of sealed discovery material attached to [non-dispositive] motions." *Id*. at 1180. (citations and internal quotations omitted). Additionally, "when a district court grants a protective order it already has determined that 'good cause' exists to protect this information from being disclosed to the public by balancing the needs for discovery against the need for confidentiality." *Id*. (citations and internal quotations omitted).

### III. DISCUSSION

Defendant moves to seal both dispositive and non-dispositive materials. (Def.'s Mot. to Maintain Seal 6-17 (Doc.#239).)

**A.   DISPOSITIVE MOTIONS**

Defendant argues that the following dispositive motions and accompanying materials should remain under seal: Defendant's Motion for Summary Judgment (Doc. #173) and Reply (Doc. #183), Plaintiffs' Opposition to Summary Judgment (Doc. #177), Supplemental Declaration of Richard G. Campbell, Jr. (Doc. #181), Second Supplemental Declaration of Richard G. Campbell, Jr. (Doc. #182), Plaintiffs' Motion for Reconsideration (Doc. #201) and Reply (Doc. #209), and Defendant's Opposition to Reconsideration (Doc. #205). (Def.'s Mot. to Maintain Seal 6-14 (Doc. #239).)   The court addresses each document in turn.

**1.   Defendant's Motion for Summary Judgment (Doc. #173) and Reply (Doc. #183)**

Defendant argues that its Motion for Summary Judgment and Reply should remain under seal because they reference testimony concerning attorney-client and/or confidential matters. (Def.'s Mot. to Maintain Seal 6.)  Specifically, Defendant points to the Declaration of Dave Johnson and Exhibits 1 -3, and 6 attached to its Motion for Summary Judgment.  (*Id*. at 6-7.)

Dave Johnson is General Counsel for Defendant.  (*Id*. at 7.)  Both the Declaration of Dave Johnson and Exhibit 3, which contains excerpts of Dave Johnson's deposition, include specific information concerning matters involving intellectual property law, patent prosecution strategy, and discussions with other in-house counsel.   In paragraphs six and seven of his declaration, Johnson refers to discussions with Plaintiffs concerning the alleged fraud, and in Johnson's deposition excerpts contained in Exhibit 3, he refers to meetings with outside counsel regarding the "Australian Flyer" and its effect on patent prosecution strategy. (Doc. #174, Ex. 3 at 39, 75-77.)  Thus, both Dave Johnson's deposition excerpts and his declaration appear to contain attorney-client communications and Defendant's proprietary information.

Exhibit 1 contains excerpts from Lena's deposition. Within her deposition, Lena testifies about her knowledge of the Monte Carlo machine stored at Kirkland & Ellis, the discovery of

4

the "Australian Flyer," and the non-disclosure of the Monte Carlo machine and "Australian Flyer" to Sara Beth Brown and Dave Johnson.  (Doc. #173, Ex. 1 at 41, 62, 81-82, 84-87.) Therefore, Exhibit 1 is replete with references to Defendant's proprietary information, communications among in-house counsel, and communications between in-house and outside counsel.

Exhibit 2 contains excerpts from Shawn's deposition.  Like Lena, within his deposition, Shawn testifies about his knowledge of the Monte Carlo machine stored at Kirkland & Ellis and the discovery of the "Australian Flyer." (Doc. #173, Ex. 2 at 92, 131.)  Shawn also testifies as to Defendant's litigation strategy in the Bally litigation, the discovery of the failure to disclose the Monte Carlo machine in a patent application, and discussions surrounding the "Australian Flyer" he had with Richard Pennington, Dave Johnson, and Kirkland & Ellis attorneys.  (*Id.*, Ex. 2 at 128, 256, 258-69, 263, 280, 286-92, 298-99.)  Like Exhibit 1, Exhibit 2 contains an extensive number of references to Defendant's proprietary information, communications among in-house counsel, and communications between in-house and outside counsel.

Exhibit 6 contains excerpts from Sarah Beth Brown's deposition.   Brown was Defendant's General Counsel immediately prior to Johnson becoming Defendant's General Counsel. (Doc. #229 at 3.)  Brown testifies in her deposition about the non-disclosure of the "Australian Flyer," discussions she had with Shawn about the "Australian Flyer," and what effect non-disclosure had on patent prosecution and other litigation strategy.  (Doc. #173, Ex. 6 at 115-16. 139-40.)  Therefore, Exhibit 6 also contains references to Defendant's proprietary information and communications among in-house counsel.

The court finds that the Declaration of Dave Johnson and Exhibits 1-3, and 6 contain Defendant's proprietary information, attorney-client communication, and work product. The public interest in accessing the courts does not outweigh the compelling need to protect Defendant's proprietary information and the compelling need to honor the attorney-client privilege and the work-product doctrine. *See Specialty Surplus Ins. Co. v. Lexington Ins. Co.*, 2007 U.S. Dist. LEXIS 60623, at *47, 2007 WL 2404703, at *18  (W.D. Wash. Aug. 17, 2007).

Accordingly, Defendant's Motion for Summary Judgment and Reply will remain under seal.

### 2.     Plaintiffs' Opposition to Summary Judgment (Doc. #177)

Defendant argues that Plaintiffs' Opposition to Summary Judgment should remain under seal because it quotes declarations and deposition testimony that concern topics covered by the attorney-client privilege and work-product doctrine.  (Def.'s Mot. to Maintain Seal 9.) Specifically, Defendant asserts that Exhibits A-E, G, H, J, and L attached to Plaintiffs' Opposition are of concern.  (*Id*. at 9-13)

Generally, Plaintiffs' Opposition and exhibits refer to Defendant's proprietary information, communications among Defendant's in-house counsel, and communications between in-house counsel and outside counsel.  Exhibit A contains excerpts of Dave Johnson's deposition in which he testifies about his discussions with Shawn regarding the Wheel Patents and intellectual property litigation strategy, his communications with outside counsel, and discussions with Shawn and Lena concerning Defendant's patent portfolio.  (Doc. #177, Ex. A at 16-28, 35-48, 72.)  Exhibit B contains excerpts of Sara Beth Brown's deposition in which she testifies regarding her communications with outside counsel pertaining to patent prosecution and litigation, her communications with other in-house counsel concerning patent validity, and her communications with Defendant's executives.  (*Id*., Ex. B at 25-28, 37-44, 96-97, 109-12, 149-50.)   Exhibit C contains excerpts of Shawn's deposition in which he refers to communications with outside counsel and Defendant's executives, discusses the validity of the Wheel Patents, and discusses patent litigation strategy.  (*Id*., Ex. C at 105-07, 220, 241 287-90, 300, 302, 317, 382.)  Exhibit D contains excerpts of Richard Pennington's deposition in which he describes his communications with in-house counsel and other executives concerning patent validity, patent strategy, and patent litigation.  (*Id*., Ex. D. at 133-40, 165-66, 201-03.)  Exhibit E is Shawn's declaration in which he describes his communications with Dave Johnson and Richard Pennington regarding the alleged frauds on the patent office and shareholders, the non-disclosure of the "Australian Flyer," and his opinion as to the validity of the Wheel Patents. (*Id*., Ex. E at 1-2.)

Exhibit G contains excerpts of Mark Hettinger's deposition in which he refers to discussions with outside counsel regarding the "Australian Flyer." (*Id.*, Ex. G at 118.) Exhibit H contains excerpts of Lena's deposition in which she testifies about her communications with Dave Johnson concerning the non-disclosure of the "Australian Flyer" and the validity of the Wheel Patents. (*Id.*, Ex. H at 85.) Exhibit J contains excerpts of the deposition of Chris Comuntizis in which he provides his expert opinion regarding the validity of the Wheel Patents, the existence of inequitable conduct, and the enforceability and value of Defendant's patents. (*Id.*, Ex. J at 54-55, 71-75.) Exhibit L contains excerpts of Anthony Bauerlocher's deposition in which he testifies about the non-disclosure of the "Australian Flyer" and disclosure in patent applications. (*Id.*, Ex. L at 30.)

The court finds that Exhibits A-E, G, H, J and L attached to Plaintiffs' Opposition contain Defendant's proprietary information, attorney-client communications, and work product. The court concludes that the compelling need to protect Defendant's proprietary information and to honor the attorney-client privilege and the work-product doctrine outweighs the public interest in accessing the courts. Accordingly, Plaintiffs' Opposition to Summary Judgment will remain under seal.

**3.     Supplemental Declaration of Richard G. Campbell, Jr. (Doc. #181) and Second Supplemental Declaration of Richard G. Campbell, Jr. (Doc. #182)**

Defendant argues that the Supplemental Declaration of Richard G. Campbell, Jr. and the Second Supplemental Declaration of Richard G. Campbell, Jr. should remain under seal because they address excerpts from Shawn and Lena's deposition referencings attorney-client communications, work product, and Defendant's proprietary information. (Def.'s Mot. to Maintain Seal 13.) The court agrees. First, the excerpts from Shawn's deposition addressed in the first declaration pertain to Shawn's communications with Dave Johnson and Lena regarding patent validity and an investigation into the non-disclosure of prior art. (Doc. #181, Ex. 1 at 285-286.) Second, the excerpts from Lena's deposition addressed in the second declaration refer to her communications with Dave Johnson concerning the failure to disclose

prior art and the impact on the Wheel Patents.  (Doc. #182, Ex. 1 at 125-27.)  Thus, the compelling need to restrict the public's access to Defendant's attorney-client communications, work product, and proprietary information warrants maintaining the Supplemental Declaration of Richard G. Campbell, Jr. and the Second Supplemental Declaration of Richard G. Campbell, Jr. under seal.

**4.    Plaintiffs' Motion for Reconsideration (Doc. #201), Defendant's Opposition to Reconsideration (Doc. #204), and Plaintiffs' Reply (Doc. #209)**

According to Defendant, the motions pertaining to Plaintiff's request for the court to reconsider its summary judgment ruling should remain under seal because they contain the same references to sensitive information as the original motions for summary judgment. (Def.'s Mot. to Maintain Seal 14.)  The court agrees and, thus, will maintain the three motions relating to reconsideration of its summary judgment ruling under seal.

**B.    NON-DISPOSITIVE MOTIONS**

Defendant argues that the following non-dispositive motions and accompanying materials should remain under seal: Plaintiffs' Motion to Compel Compliance with Subpoena (Doc. #64), Plaintiffs' Expert Disclosure (Doc. #81), Defendant's Motion for Terminating Sanctions (Doc. #135) and Reply (Doc. #148), Plaintiffs' Opposition to Terminating Sanctions (Doc. #144), Supplemental Declaration of Richard G. Campbell, Jr. (Doc. #147), Defendant's Supplemental Memorandum in Support of Motion for Terminating Sanctions (Doc. #188), and Second Supplemental Declaration of Richard G. Campbell, Jr. (Doc. #187).  (Def.'s Mot. to Maintain Seal 14-18.)  Because the parties simply stipulated to the protective order in this case, a particularized "good cause" showing under Fed. R. Civ. Pro. 26(c) to keep documents under seal was not made.  Therefore, the court must address each document Defendant seeks to keep under seal even though the document and its contents may fall within the terms of the protective order.  *See Kamakana*, 447 F.3d at 1176, 1186-87.

/ / /

/ / /

8

**1.    Plaintiffs' Motion to Compel Compliance with Subpoena (Doc. #64)**

Defendant argues that Plaintiffs' Motion to Compel Compliance with Subpoena references Shawn's declaration in which he describes patent litigation matters involving Defendant and its outside counsel. (Def.'s Mot. to Maintain Seal 14.) According to Defendant, the information Shawn describes is attorney-client communication and work product. (*Id*.) The court agrees with Defendant and concludes that good cause exists to keep Plaintiffs' Motion to Compel Compliance with Subpoena under seal.

**2.    Plaintiffs' Expert Disclosure (Doc. #81)**

Defendant asserts that Plaintiffs' Expert Disclosure should remain under seal because it contains the report of Chris Comuntiz. (Def.'s Mot. to Maintain Seal 15.) As discussed above with respect to Exhibit J of Plaintiffs' Opposition to Summary Judgment, Comuntiz's deposition provides his expert opinion regarding the validity of the Wheel Patents, the existence of inequitable conduct, and the enforceability and value of Defendant's patents. Comuntiz's report in Plaintiffs' Expert Disclosure discusses similar information, (Doc. #81, Ex. 1 at 3-30) and thus, like Comuntiz's deposition, contains Defendant's proprietary information, attorney-client communication, and work product. Therefore, Defendant has shown good cause to maintain this document under seal.

**3.    Defendant's Motion for Terminating Sanctions (Doc. #135) and Plaintiffs' Opposition to Terminating Sanctions (Doc. #144)**

According to Defendant, its Motion for Terminating Sanctions should remain under seal because it references attached exhibits containing attorney-client communications, work product and Defendant's proprietary information. (Def.'s Mot. to Maintain Seal 15-16.) Exhibits 11-16 attached to Defendant's motion refer to the Wheel Patents, communications with outside counsel, Shawn's notes regarding intellectual property strategy while he was employed by Defendant, a memorandum from Shawn to some of Defendant's other employees, and communications between Defendant's executives and in-house counsel. (Doc. #135, Ex. 11-16.) Because of the attorney-client communications, work product, and proprietary information

referenced by Defendant's Motion for Terminating Sanctions, good cause exists to maintain it under seal.

Similarly, Plaintiffs' Opposition to Terminating Sanctions references attorney-client communications and work product attached as Exhibit B.  Exhibit B contains the deposition of Sara Beth Brown in which she discusses numerous matters pertaining to Defendant's patents and intellectual property. (Doc. #177, Ex. B.) Thus, good cause supports maintaining Plaintiffs' Opposition to Terminating Sanctions as well.

**4.    Defendant's Reply for Terminating Sanctions (Doc. #148) and Supplemental Declaration of Richard G. Campbell, Jr. (Doc. #147)**

Defendant asserts that its Reply for Terminating Sanctions references several exhibits attached to the Supplemental Declaration of Richard G. Campbell, Jr. that contain attorney-client communications and work product.  (Def.'s Mot. to Maintain Seal 16.)  Exhibits 25 and 26 contain excerpts of Shawn's deposition in which he discusses the validity of Defendant's patents, patent litigation strategy, and communications with outside counel.  (Doc. #147, Ex. 25, 26.)  Exhibit 29 contains a fax from Defendant's outside counsel to Shawn regarding intellectual property issues.  (*Id.*, Ex. 29.) Therefore, the court agrees with Defendant that the attorney-client communications and work product within these two documents justifies maintaining them under seal.

**5.    Supplemental Memorandum in Support of Motion for Terminating Sanctions (Doc. #188) and Second Supplemental Declaration of Richard G. Campbell, Jr. (Doc. #187)**

Defendant argues that its Supplemental Memorandum in Support of Motion for Terminating Sanctions references an exhibit attached to Second Supplemental Declaration of Richard G. Campbell, Jr. that contains attorney-client communications and Defendant's proprietary information. (Def.'s Mot. to Maintain Seal 17.) Exhibit 28 includes emails between Defendant and Defendant's outside counsel. (Doc. #188, Ex. 28.) Because these emails appear to contain attorney-client communications and proprietary information, good cause exists to

keep Defendant's Supplemental Memorandum in Support of Motion for Terminating Sanctions and Second Supplemental Declaration of Richard G. Campbell, Jr. under seal.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion To Maintain Seal (Doc. #239) is **GRANTED**. The following documents will remain under seal:

- Defendant's Motion for Summary Judgment (Doc. #173)
- Plaintiffs' Opposition to Summary Judgment (Doc. #177)
- Defendant's Reply for Summary Judgment (Doc. #183)
- Supplemental Declaration of Richard G. Campbell, Jr. (Doc. #181)
- Second Supplemental Declaration of Richard G. Campbell, Jr. (Doc. #182)
- Plaintiffs' Motion for Reconsideration (Doc. #201)
- Defendant's Opposition to Reconsideration (Doc. #205)
- Plaintiffs' Reply for Reconsideration (Doc. #209)
- Plaintiffs' Motion to Compel Compliance with Subpoena (Doc. #64)
- Plaintiffs' Expert Disclosure (Doc. #81)
- Defendant's Motion for Terminating Sanctions (Doc. #135)
- Plaintiffs' Opposition to Terminating Sanctions (Doc. #144) Defendant's Reply for Terminating Sanctions (Doc. #148),
- Supplemental Declaration of Richard G. Campbell, Jr. (Doc. #147)
- Defendant's Supplemental Memorandum in Support of Motion for Terminating Sanctions (Doc. #188)
- Second Supplemental Declaration of Richard G. Campbell, Jr. (Doc. #187)

**IT IS FURTHER ORDERED** that all other documents in this case not listed above will be unsealed.

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IT IS FURTHER ORDERED** that any party seeking to file a document under seal must comply with the requirements of *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006).

DATED:  May 28, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

12