FILED ✓   RECEIVED
ENTERED   SERVED ON
COUNSEL/PARTIES OF RECORD

MAY 2 4 2011

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

SHAWN VAN ASDALE, an individual,  )
and LENA VAN ASDALE, an individual )
              Plaintiffs,  )
                    )
        vs.           )
                    )
INTERNATIONAL GAME ,  )
TECHNOLOGY, a Nevada corporation, )
                    )
        Defendant.    )

3:04-cv-00703-RAM

**MEMORANDUM DECISION AND ORDER**

Before the court is Plaintiffs' Motion for Attorneys' Fees, Costs, and Prejudgment Interest. (*See* Doc. # 323-327.)[1] Defendant opposed (Doc. #339), and Plaintiffs replied (Doc. #344). At the court's request (*see* Doc. #351), Plaintiffs supplemented their motion. (Doc. #352.) Defendant filed a response to the supplement (Doc. #353) and Plaintiffs move to strike the response (Doc. #354). After a thorough review, the court grants Plaintiffs' Motion for Attorneys' Fees, Costs, and Prejudgment Interest (Doc. #323), as outlined below. The court denies Plaintiffs' Motion to Strike (Doc. #354).

## I. BACKGROUND

Plaintiffs Shawn Van Asdale and Lena Van Asdale (Plaintiffs), husband and wife, are former corporate counsel for Defendant International Game Technology, a Nevada corporation (IGT). (Pls.' Compl. (Doc. # 3).) IGT specializes in the design, development, manufacturing, distribution and sale of computerized gaming machines and systems products. (IGT's Mot. for Summ. J. (Doc. # 173) 6.) Plaintiffs filed their Complaint against IGT on December 1, 2004,

---

[1]    Refers to court's docket number.

asserting a claim for whistleblower protection relief under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A (SOX), and state law claims for tortious discharge, intentional interference with contractual relations, retaliation, and intentional infliction of emotional distress. (Doc. #3.) Prior to filing the Complaint in district court, Plaintiffs filed and voluntarily dismissed a formal complaint before the Secretary of Labor. (Doc. # 3 at ¶ 60.)

IGT filed a motion for summary judgment on November 22, 2006. (Doc. # 173.) On June 13, 2007, the court granted summary judgment as to Plaintiffs' SOX claim, and declined to retain jurisdiction over the remaining state law claims. (Doc. # 197.) Plaintiffs appealed, and the United States Court of Appeals for the Ninth Circuit issued an opinion finding that Plaintiffs raised a genuine issue of material fact regarding the cause of their terminations. (Doc. # 212, 220.) The Ninth Circuit reversed the grant of summary judgment as to the SOX claim, vacated dismissal of the state law claims, and remanded the matter to the district court to address, in the first instance, IGT's motion for summary judgment as to the state law claims. (Doc. # 220.) On remand, the court issued an order granting summary judgment as to Plaintiffs' state law claims and denying summary judgment as to application of the after-acquired evidence doctrine. (Doc. # 235.)

A jury trial was held, and a verdict was returned in favor of Plaintiffs, awarding actual damages in the amount of $955,597 to Shawn Van Asdale and $1,270,303 to Lena Van Asdale. (Doc. # 316-317.)[2] Judgment was entered on February 9, 2011. (Doc. # 321.) Plaintiffs filed the instant Motion for Attorney Fees, Costs, and Prejudgment Interest on February 17, 2011, and IGT opposed.

## II. LEGAL STANDARD

SOX includes protection for whistleblower employees of publicly-traded companies who have suffered adverse-employment action for reporting or cooperating in the investigation of

---

[2]    The court initially granted IGT's motion to strike Plaintiffs' jury demand, but granted Plaintiffs' renewed jury demand after SOX was amended to add the right to a jury trial. 18 U.S.C. § 1514A(b)(2)(E). (*See* Doc. # 246, 268, 271-274.)

2

corporate fraud or violations of Securities and Exchange Commission rules or regulations. 18 U.S.C. § 1514A(a). A whistleblower under 18 U.S.C. § 1514A has two options for seeking relief: (1) file a complaint with the Secretary of Labor; or (2) if the Secretary has not issued a final decision within 180 days, bring an action in the district court. 18 U.S.C. § 1514A(b)(1).

"An employee prevailing in any action under subsection (b)(1) shall be entitled to all relief necessary to make the employee whole." 18 U.S.C. § 1514A(c). This relief "shall include-- (A) reinstatement with the same seniority status that the employee would have had, but for the discrimination; (B) the amount of back pay, with interest; and (C) compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees." *Id.*

Once a party has established that it is entitled to an award of attorney's fees, "[i]t remains for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Under federal law, reasonable attorney's fees are generally based on the traditional "lodestar" calculation set forth in *Hensley. See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, the court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Second, the court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. *See Fischer*, 214 F.3d at 1119 (citation omitted).

The *Kerr* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or other circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

3

1   Kerr, *526 F.2d at 70*. *Factors one through five have been subsumed in the lodestar*
2   calculation. *See Morales v. City of San Rafael*, 96 F.3d 359, 364 n. 9 (9th Cir. 1996) (citations
3   omitted). Further, the Ninth Circuit, extending *City of Burlington v. Dague*, 505 U.S. 557,
4   567 (1992), held that the sixth factor, whether the fee is fixed or contingent, may not be
5   considered in the lodestar calculation. *See Davis v. City & County of San Francisco*, 976 F.2d
6   1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993).
7   There is a strong presumption that the lodestar figure represents a reasonable fee. *Jordan v.*
8   *Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) (internal citations omitted). However,
9   upon considering the relevant *Kerr* factors that may bear on reasonableness, the court may
10  adjust the award from the lodestar figure. *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th
11  Cir. 2006). Only in rare instances should the lodestar figure be adjusted on the basis of these
12  considerations. *Id.* (citations omitted). "District courts [also] possess the necessary discretion
13  to adjust the amounts awarded to address excessive and unnecessary effort expended in a
14  manner not justified by the case." *Id.*

## III. DISCUSSION

### A.   ATTORNEYS' FEES

#### 1.   Amount Requested

Plaintiffs request a total of $1,237,956 in attorneys' fees. (*See* Doc. # 352 2.) IGT challenges the amount of Plaintiffs' request on various grounds, each of which is discussed below.

#### 2.   Reasonable Rate & *Kerr* Factors

Plaintiffs assert that a reasonable hourly rate in this case is $450 for attorneys and $120 for paralegals. (Doc. # 323 3.) IGT argues that Plaintiffs' counsel customarily charge $185 per hour for attorney services and $90 for paralegal services. (Doc. # 339 7-8, Ex. 8-9.)

In calculating the lodestar figure, reasonable hourly rates are determined by the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895

4

1   (1984); *see also Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001). "The burden is on the

2   plaintiff to produce evidence that the requested rates are in line with those prevailing in the

3   community for similar services by lawyers of reasonably comparable skill, experience, and

4   reputation." *Sorenson*, 239 F.3d at 1145 (internal quotations and citation omitted). "Affidavits

5   of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and

6   rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney,

7   are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps*

8   *Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (citations omitted). "The defendant may

9   introduce rebuttal evidence in support of a lower hourly rate." *Sorenson*, 239 F.3d at 1145.

10  If the fee applicant has not met its burden of establishing the reasonableness of the requested

11  rates, the court may determine the rate based on its experience and knowledge of prevailing

12  rates in the community. *See, e.g., Bademyan v. Receivable Mgmt. Servs. Corp.*, 2009 WL

13  605789 at *5 (C.D. Cal. 2009).

14         Plaintiffs submit declarations from Graham Galloway, Esq., John Echeverria, Esq., and

15  William Jeanney, Esq. (Doc. # 323 Ex. 2-4.) Each of these attorneys has more than twenty-five

16  years of experience representing plaintiffs, and each confirms $450 is a reasonable hourly rate

17  for an attorney in this community with Ms. Piscevich's experience. (*Id.*) Plaintiffs also submit

18  the declarations of counsel, Ms. Piscevich and Mr. Lenz. (Doc. # 323 Ex. 5-6.) Ms. Piscevich

19  has forty years of litigation experience. (Doc. # 323 Ex. 5 at ¶ 1.) Mr. Lenz has nineteen years

20  of litigation experience. (Doc. # 323 Ex. 6 at ¶ 4.)

21         To rebut the requested rate, first, IGT provides Plaintiffs' motion to retax costs and fees

22  incurred in connection with IGT's motion for terminating sanctions, wherein Plaintiffs argue

23  that $250 to $350 is a reasonable hourly rate for a business litigation attorney in this

24  community. (Doc. # 339 Ex. 7 at 3:14-22.) Second, IGT provides declarations of Ms. Piscevich

25  and Mr. Lenz, filed in unrelated actions, asserting hourly rates of $185 to $175 for attorneys,

26  and $85 to $95 for paralegals. (Doc. # 339 Ex. 8 at ¶ 7, Ex. 9 at ¶ 9.) Third, IGT also submits

27

28                                              5

1   affidavits of various employment attorneys in unrelated actions, with hourly rates of $320 to

2   $325. (Doc. # 339 Ex. 10.)

3           The court finds the declarations submitted by Mr. Galloway, Mr. Echeverria, and

4   Mr. Jeanney, are sufficient to establish that $450 is a reasonable hourly rate for Ms. Piscevich,

5   an attorney with forty years of litigation experience. (*See* Doc. # 323 Ex. 2-4.) The $185

6   attorney rate and $90 paralegal rate suggested by IGT are Ms. Piscevich's negotiated rates for

7   medical malpractice defense actions. (Doc. # 344 5.) The prevailing rate an attorney charges

8   may vary based on the nature of the case, and it is not surprising that the rate would be higher

9   in an action involving an employment dispute, than in a medical malpractice or other insurance

10  defense matter with a negotiated rate. The court recognizes that the declarations submitted

11  by IGT are from well-respected and seasoned litigators, but they do not have the forty years

12  of litigation experience attributed to Ms. Piscevich which justifies the increase from the $320-

13  $325 they command to the $450 rate requested by Ms. Piscevich.

14          The court does not believe Plaintiffs met their burden of establishing that $450 is a

15  reasonable hourly rate for Mr. Lenz. The court recognizes that Mr. Lenz is an experienced and

16  skilled litigator, and while Ms. Piscevich maintains that Mr. Lenz is billed out at an hourly rate

17  identical to hers, Ms. Piscevich has forty years of trial experience as compared to Mr. Lenz's

18  nineteen years. (Doc. # 323 Ex. 5 at ¶ 1, Ex. 6 at ¶ 4.) In addition, the declarations submitted

19  by attorneys in the community in support of Plaintiffs' motion only reference the skill and

20  experience of Ms. Piscevich, and not that of Mr. Lenz. (Doc. # 323 Ex. 2-4.) Plaintiffs have

21  previously argued that a reasonable hourly rate for an experienced litigator in this community

22  falls in the range of $250 to $350. (Doc. # 339 Ex. 7 at 3:14-22.) Accordingly, the court will

23  reduce Mr. Lenz's hourly rate to $350 for purposes of the lodestar calculation.[3]

24

25          [3]      Plaintiffs' continual reference to the number of lawyers and other professionals present
    in court for the defense during trial, and their hourly rates, is not relevant to *Plaintiffs'* Motion for
26  Attorneys' Fees, Costs, and Prejudgment Interest. (*See* Doc. # 344 at 3, 9, 10, n. 21, Doc. # 344-1 at
    ¶ 9.) Plaintiffs, as prevailing party, have the burden of establishing the reasonableness of the hourly
27  rates and time expended by their counsel. Defense counsel's hourly rates and hours expended on this

28                                                          6

With respect to Ms. Fenner's time, Plaintiffs did not file any supporting documentation concerning her experience and skill to support a rate of $450. The court concludes $350 is a reasonable hourly rate for Ms. Fenner, based on its knowledge of prevailing rates in the community.

Plaintiffs do not provide any evidence to support the request for an hourly rate of $120 for paralegal work. IGT submits declarations of Plaintiffs' counsel from other matters where Plaintiffs' counsel requested a rate of $85 or $90 for paralegal work in medical malpractice actions. (Doc. # 339 Ex. 8 at ¶ 7, Ex. 9 at ¶ 9.) As noted above, the negotiated rate in medical malpractice actions may differ from the prevailing rate in an employment matter such as the instant matter. In fact, one of the declarations submitted by IGT in support of its opposition reflects an hourly rate of $125 for paralegals. (Doc. # 339 Ex. 10.) Therefore, the court concludes that the $120 hourly rate for paralegal work requested by Plaintiffs is reasonable.

In sum, the court will calculate the lodestar amount based on hourly rates of $450 for Ms. Piscevich, $350 for Mr. Lenz and Ms. Fenner, and $120 for paralegal work. Accordingly, the fees requested are initially reduced as follows:

| Lawyer/Paralegal | Hours | Rate | Total |
| --- | --- | --- | --- |
| Piscevich | 981.2 | $450 | $441,540 |
| Lenz | 1,531.7 | $350 | $536,095 |
| Fenner | 20.10 | $350 | $7,035 |
| Stark | 791.3 | $120 | $94,956 |
| Harvel | 1.2 | $120 | $144 |
| Chambers | 25.05 | $120 | $3,006 |
| **TOTAL:** | | | **$1,082,776** |

The next issue that confronts the court is the fact that this case has spanned in excess of six years. The Ninth Circuit has held that the court has discretion to apply the rates in effect at the time the work was performed, or the rates in effect at the time of the fee application, but

_____

matter are not at issue.

has found it is an abuse of discretion to apply market rates in effect more than two years before the work was performed. *See Bell v. Clackamas County*, 341 F.3d 858, 860 (9th Cir. 2003), *as amended* (citing *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997)); *Schwarz v. Secretary of HHS*, 73 F.3d 895, 908-09 (9th Cir. 1995)); *Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1992).

Plaintiffs litigated this case for nearly seven years before obtaining a jury verdict in their favor. Therefore, the court will assess the fees at the current rate. *See Gates*, 987 F.2d at 1406 (recognizing "district courts have discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use [of] funds").

Finally, the court will address the remaining *Kerr* factors not subsumed in the lodestar calculation in determining whether to enhance or reduce the lodestar figure. *Kerr*, 526 F.2d at 70; *Fischer*, 214 F.3d at 1119. With respect to the seventh *Kerr* factor, Plaintiffs have indicated that there were no time limitations imposed. (Doc. # 323 5.) As to the eighth *Kerr* factor, the amount involved and results obtained, Plaintiffs point out that this case spanned nearly seven years and resulted in a verdict in their favor. (*Id.*) The court addressed the ninth *Kerr* factor, the experience, reputation, and ability of the attorneys, above. With respect to the tenth *Kerr* factor, the "undesirability" of the case, Plaintiffs indicate this case was not undesirable. (Doc. # 323 6.) As to the eleventh *Kerr* factor, the nature and length of the professional relationship with the client, Plaintiffs indicate there was no previous relationship. (Doc. # 323 6.) As to the twelfth and final *Kerr* factor, awards in similar cases, Plaintiffs indicate there are no similar awards. (*Id.*) Considering the *Kerr* factors not subsumed in the lodestar calculation, the court sees no basis for making any further enhancement or reduction. In conclusion, the court calculates the initial lodestar figure at $1,082,776.

### 3.   Results Obtained

IGT advocates that the court consider a percentage reduction of the hours expended from the time of Plaintiffs' complaint until December 8, 2009, when the state-law claims were

1   dismissed on summary judgment and taking into account the hours expended in litigation
2   related to the unsuccessful claims. (Doc. # 339 13-14.) In addition, IGT points out that
3   Plaintiffs demanded much more in settlement negotiations and at trial than they were actually
4   awarded by the jury. (*See id.*, Ex. 1-4, 6.) As a result, IGT requests a 50% reduction in the
5   hours expended to reflect what it perceives as Plaintiffs' limited success. (*Id.*)

6          Plaintiffs assert that an award of attorney's fees under SOX is mandatory and not
7   discretionary. (Doc. # 344 12.) Plaintiffs contend that IGT's reliance on *Hensley* and *McCown*
8   is misplaced because those cases only apply to attorney's fees awarded under 42 U.S.C. § 1988.
9   (*Id.*) Plaintiffs claim their settlement demands are not relevant for purposes of determining
10  their success at trial. (*Id.* at 14.) Ultimately, Plaintiffs take the position that all of their claims
11  were related to their wrongful termination from IGT, and they obtained significant success
12  at trial, so that a percentage reduction is not justified. (*Id.* at 10-12.)

13         First, while Plaintiffs take the position that fees awarded under SOX are mandatory,
14  the statute explicitly qualifies the recovery of fees with the requirement that they be
15  "reasonable." 18 U.S.C. § 1514A(c)(2)(C). While the mandatory language in 18 U.S.C. §
16  1514A(c)(2)(C) may deprive the court of discretion on the propriety of awarding fees to the
17  prevailing party, the *amount* awarded is clearly within the court's discretion because of the
18  statute's use of the term "reasonable." *See e.g., Twin City Sportservice, Inc. v. Charles O.*
19  *Finley & Co., Inc.*, 676 F.2d 1291, 1312-1313 (9th Cir. 1982) (finding award of fees on successful
20  antitrust suit was mandatory, but amount of fees was up to court's discretion).

21         Second, Plaintiffs contend that *Hensley* only applies in a request for fees under 42 U.S.C.
22  § 1988. As the Supreme Court specifically noted, "[t]he standards set forth in [*Hensley*] are
23  generally applicable in all cases in which Congress has authorized an award of fees to a
24  'prevailing party.'" *Hensley*, 461 U.S. at 433 n. 7. SOX awards reasonable attorney's fees to
25  a prevailing employee. 18 U.S.C. § 1514A(c). Moreover, the Ninth Circuit has referenced
26  *Hensley* in the context of fee requests made outside of 42 U.S.C. § 1988. *See, e.g., Nadarajah*
27  *v. Holder*, 569 F.3d 906, 910 (9th Cir. 2009) (fee request made under the Equal Access to

28                                              9

Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A)); *Jankey v. Poop Deck*, 537 F.3d 1122, 1123, 1130-31 (9th Cir. 2008) (request for fees under Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213); *Park, ex rel. Park v. Anaheim Union High School Dist.*, 464 F.3d 1025, 1035 (9th Cir. 2006) (fee request under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et. seq.*).

Third, the court finds IGT's reliance on Plaintiffs' settlement demands in its "results obtained" analysis is improper. IGT relies on *McCown v. City of Fontana*, 565 F.3d 1097 (9th Cir. 2009), in asking the court to consider Plaintiffs' settlement demands, but in *McCown*, *both* parties sought to introduce evidence of settlement discussions and negotiations for purposes of ruling on the request for attorney's fees. *McCown*, 565 F.3d at 1104-05 n. 4. Courts "generally refrain from referencing proposed settlement agreements in light of Federal Rule of Evidence 408, which seeks to protect the confidentiality of settlement negotiations." *Id.* Here, IGT is the only party who seeks to introduce the settlement negotiations as evidence, and therefore the court will not compare Plaintiffs' settlement demand to the ultimate verdict amount in ruling on the fees motion.

Finally, the court will examine the results obtained by Plaintiffs, an important factor in determining a fee award. *Hensley*, 461 U.S. at 434. Under *Hensley*, this determination is made by answering two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley*, 461 U.S. at 434; *see also McCown*, 565 F.3d at 1103.

Here, the answer to the first question is no. Claims are related if "they involve a common core of facts or are based on related legal theories." *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005) (internal quotations omitted). The SOX claim Plaintiffs prevailed on and the state law claims Plaintiffs did not prevail on are clearly related. They all arise from the same common core set of facts: Plaintiffs' whistleblowing activities and subsequent termination from IGT.

The answer to the second question is yes. Plaintiffs achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award. *Hensley,* 461 U.S. at 434. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. "There is no precise rule or formula for making these determinations" and "[t]he court necessarily has discretion in making this equitable judgment." *Id.* at 436-37.

IGT argues Plaintiffs prevailed on only one of their original claims, however, the Supreme Court has recognized that proportionality is not the test to be utilized by the courts. *See Hensley,* 461 U.S. at 435 n. 11; *see also McCown,* 565 F.3d at 1104 (citation omitted); *McGinnis v. Kentucky Fried Chicken,* 51 F.3d 805, 806-09 (9th Cir. 1994) (arithmetic proration "makes no practical sense"). "[A] plaintiff does not need to receive all the relief requested in order to show excellent results warranting the fully compensatory fee." *Dang v. Cross,* 422 F.3d 800, 813 (9th Cir. 2005) (citations omitted).

While Plaintiffs only prevailed on the SOX claim, the court finds that Plaintiffs achieved an excellent result, and should recover a fully compensatory fee. This action involved protracted litigation for a period of more than six years, and there can be no question that the result was significant. Although IGT considers the verdict in excess of $2 million to be small in comparison with the amount Plaintiffs requested at trial, in the court's experience, they obtained an excellent result.

The court is mindful that it must consider whether Plaintiffs' unsuccessful pursuits were a significant enough portion of their overall efforts to justify a reduction in fees. In the Complaint, Plaintiffs' requested damages under SOX including reinstatement with same seniority status, back pay with interest, lost earnings, benefits, bonuses, and stock options and compensation for special damages including litigation costs, emotional distress, expert witness fees and reasonable attorneys fees. (Doc. # 3 15.) In their state law claims, Plaintiffs requested lost earnings, lost benefits, stock options and bonuses, and interest, as well as attorney's fees and costs, and exemplary damages. (*Id.* at 16-19.) While Plaintiffs' SOX cause of action was

the only claim that went to trial, the damages that Plaintiffs requested, in comparison to the state law claims, were by and large the same.

In *McCown*, the Ninth Circuit noted that "results may not be measured solely in terms of damages" and "the district court should consider not only the monetary results but also the significant nonmonetary results [the plaintiff] achieved for himself and other members of society." *McCown*, 565 F.3d at 1105 (citing *Morales v. City of San Rafael*, 96 F.3d 359, 365 (9th Cir. 1996)). "Such a nonmonetary victory may constitute 'excellent results' for the purpose of calculating attorney's fees." *Id*. The Plaintiffs received a result that confers a meaningful public benefit.  Plaintiffs note, and IGT does not dispute, that this is the first trial of a whistleblower protection action under SOX in this jurisdiction. (Doc. # 323 4.) Plaintiffs also correctly point out that this matter afforded the Ninth Circuit its "first opportunity to examine the substantive requirements necessary to establish a claim under the whistleblower-protection provisions of [SOX]." *Van Asdale v. IGT*, 577 F.3d 989, 991 (9th Cir. 2009). In enacting SOX, congress made clear that fraud against shareholders is an issue of public concern, and created a civil remedy for employees of public companies who are subject to discrimination or retaliation for reporting corporate fraud. S. Rep. No. 107-146, at 1 (2002). Congress passed SOX in the wake of the Enron scandal, in response to what it called:

> [A] culture, supported by law, that discourage[s] employees from reporting fraudulent behavior not only to the proper authorities...but even internally. This "corporate code of silence" not only hampers investigations, but also creates a climate where ongoing wrongdoing can occur with virtual impunity.

S. Rep. No. 107-146, at 5 (2002). The whistleblower protection provision serves to "encourage and protect [employees] who report fraudulent activity that can damage innocent investors in publicly traded companies." *Id*. at 19. Accordingly, the excellent result achieved by Plaintiffs was a jury verdict, awarding them in excess of $2 million, vindicating their own rights and the public interest in preventing fraud against shareholders. For these reasons, the court declines to impose a percentage reduction in fees.

///

12

### 4.   Hours Reasonably Expended

IGT argues that the number of hours spent by Plaintiffs' counsel should be reduced because Plaintiffs improperly included hours relating to: (1) the *IGT/Bally* litigation; (2) defending the motion for terminating sanctions that they lost; (3) appeals; (4) the OSHA complaint that was voluntarily withdrawn; (5) non-testifying expert Chris Comuntzis; (6) Ms. Fenner; and (7) entries that are unrelated or ambiguous. (Doc. # 339 8-12.)

At the outset, "[t]he fee applicant bears the burden of documenting the appropriate hours expended in litigation and must submit evidence in support of those hours worked." *Gates*, 987 F.2d at 1397 (citing *Hensley*, 461 U.S. at 433, 437). Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated. *See Id.* (citation omitted). The party opposing the fee application then has the burden of submitting evidence "challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Id.* at 1397-98 (citing *Blum*, 465 U.S. at 892 n. 5).

### a. Hours related to the *Bally* litigation

IGT argues Plaintiffs are not permitted to recover 37.6 hours in fees associated with the *Bally v. IGT* litigation. (Doc. # 339 8-9.) Plaintiffs maintain that the depositions in the *Bally* litigation would not have taken place but for the instant litigation. (Doc. # 344 6.) In its minute order, the court asked Plaintiffs to specifically identify the billing entries, by date and description, that are related to time expended on the *Bally* litigation. (Doc. # 351.) In response, Plaintiffs filed Doc. # 352, and identified 39.9 hours in Exhibit 18. (Doc. # 352 4, Ex. 18.) Although the court did not request further briefing, Plaintiffs included an explanation in an effort to justify the time spent. (*Id.*) IGT filed a response arguing: (1) Exhibit 18 fails to reference entries challenged by IGT; (2) Plaintiffs' explanations for these entries do not make sense; and (3) Plaintiffs include entries that were not even challenged by IGT. (Doc. # 353.) Plaintiffs filed a motion to strike IGT's response. (Doc. # 354.)

13

1   The justification provided by Plaintiffs was beyond the scope of the court's minute
2   order, and was not provided in Plaintiffs' motion or reply.  Therefore, the court will not
3   consider the explanations provided by Plaintiffs in Exhibit 18.   The court denies Plaintiffs'
4   motion to strike because it finds IGT's response was reasonable in light of Plaintiffs improper
5   inclusion of additional briefing and the discrepancy between the hours attacked by IGT and
6   the hours identified by Plaintiffs in Exhibit 18.

7   Relief under 18 U.S.C. § 1514A(c) is provided to an employee prevailing in an *action*
8   *brought under* 18 U.S.C. § 1514A(b)(1).  The *Bally* action was separate from Plaintiffs' action
9   under 18 U.S.C. § 1514A, and therefore Plaintiffs' fee award should be reduced by the amount
10  of hours billed by Plaintiffs' counsel attributable to the *Bally* action. After reviewing Plaintiffs'
11  billing records, IGT's challenged entries, and Plaintiffs' Exhibit 18 (not including the
12  explanations), the court determines the following entries were for time expended in connection
13  with the *Bally* litigation and will reduce the fee award accordingly:

| Date | Lawyer/ Paralegal | Hours | Rate | Description | Total |
|------|-------------------|-------|------|-------------|-------|
| 7/24/06 | Lenz | 1.0 | $350 | Legal analysis re subpoena duces tecum from Bally | $350 |
| 7/25/06 | Piscevich | 3.0 | $450 | Review subpoena from Bally & review documents that may be responsive | $1,350 |
| 7/25/06 | Piscevich | 0.5 | $450 | Dictate letter to Ms.  Candido re: subpoena & documents | $225 |
| 7/25/06 | Stark | 1.6 | $120 | Review and organize documents with Ms. Piscevich for approval to produce pursuant to subpoena; prepare boxes for pickup and delivery | $192 |
| 7/26/06 | Lenz | 0.5 | $350 | Review and revise responses to Subpoena Duces Tecum from Ballys | $175 |
| 7/27/06 | Piscevich | 2.0 | $450 | Review documents & revise selection to be produced & revise letter to Ms.  Candido | $900 |

| 7/28/06 | Piscevich | 0.3 | $450 | Telephone call with Ms. Candido re: documents produced by plaintiffs in response to subpoena; review email from Ms. Candido | $135 |
|---------|-----------|-----|------|------|------|
| 7/28/06 | Piscevich | 0.2 | $450 | Telephone call with Ms. Candido re: status of motions | $90 |
| 7/28/06 | Piscevich | 0.1 | $450 | Review letter from Ms. Candido | $45 |
| 8/2/06 | Lenz | 0.3 | $350 | Receive and review subpoena from IGT in Bally case re communications with Bally's counsel | $105 |
| 8/2/06 | Piscevich | 0.2 | $450 | Review letter from Mr. Dilger & subpoena & notice to take deposition | $90 |
| 8/2/06 | Piscevich | 0.2 | $450 | Telephone call with Mr. Peek re: his deposition notice & mine | $90 |
| 8/2/06 | Piscevich | 0.4 | $450 | Dictate letter to Mr. Dilger | $180 |
| 8/10/06 | Piscevich | 0.3 | $450 | Review letters from Ms. Candido re: documents & privileges; call to Ms. Candido re: letters | $135 |
| 8/30/06 | Lenz | 2.0 | $350 | Receive and review discovery dispute letter from N. Dilger; legal analysis and draft response to discovery dispute letter re subpoena to Piscevich & Fenner | $700 |
| 8/30/06 | Piscevich | 0.1 | $450 | Review letter from Mr. Dilger | $45 |
| 8/31/06 | Lenz | 0.5 | $350 | Review and revise letter to N. Dilger re subpoena | $175 |
| 2/21/07 | Lenz | 1.0 | $350 | Receive and review correspondence from A. Candido to N. Dilger; legal analysis re correspondence for possible revision of Opp to motion for reconsideration | $350 |
| 2/21/07 | Piscevich | 0.1 | $450 | Review email from Mr. Peek & letter | $45 |
| 2/22/07 | Piscevich | 0.2 | $450 | Telephone call with Mr. Peek advising will produce email | $90 |

| 4/19/07 | Piscevich | 0.4 | $450 | Telephone calls from & with Mr. Delk & clients re: depositions in the Bally's case | $180 |
|---------|-----------|-----|------|-----------------------------------------------------------------------------------|------|
| 4/20/07 | Lenz | 0.5 | $350 | Review subpoenas for depositions of Shawn and Lena; email to SVA and LVA re depositions | $175 |
| 4/23/07 | Piscevich | 0.5 | $450 | Review subpoenas served on clients; dictate letter to Mr. Peek & Mr. Verhoeven | $225 |
| 5/16/07 | Piscevich | 0.2 | $450 | Telephone call with Mr. Peek re: privilege issues | $90 |
| 5/16/07 | Piscevich | 0.2 | $450 | Telephone call from Mr. Dilger re: privilege issues | $90 |
| 5/16/07 | Piscevich | 0.1 | $450 | Review letter from Mr. Dilger | $45 |
| 5/16/07 | Piscevich | 0.5 | $450 | Dictate letter to Mr. Dilger & Mr. Peek | $225 |
| 5/21/07 | Piscevich | 0.1 | $450 | Telephone call to Mr. Peek's office for order | $45 |
| 5/21/07 | Piscevich | 0.2 | $450 | Telephone call with Mr. Peek re: hearing & Markman order | $90 |
| 5/21/07 | Piscevich | 0.2 | $450 | Telephone call with Mr. Delk re: Shawn's deposition & alternative dates | $90 |
| 5/30/07 | Piscevich | 0.6 | $450 | Telephone calls to & from Ms. Candido & clients re: depositions & rescheduling depositions in Bally case | $270 |
| 5/31/07 | Piscevich | 0.2 | $450 | Telephone call with clients re: Bally depositions | $90 |
| 5/31/07 | Piscevich | 0.4 | $450 | Dictate letter to Mr. Dilger re: depositions | $180 |
| 6/1/07 | Piscevich | 0.1 | $450 | Review letter from Mr. Dilger re: waiver of privilege | $45 |
| 6/4/07 | Piscevich | 8.0 | $450 | Attend & defend deposition of Mrs. Van Asdale in IGT/Bally litigation | $3,600 |
| 7/9/07 | Piscevich | 0.1 | $450 | Review letter from Ms. Candido cancelling deposition | $45 |
| 4/15/08 | Lenz | 0.5 | $350 | Telephone conference with A. | $175 |

16

| | | | | Candido re time of depo for Shawn Van Asdale; email to SVA re depo time | |
|---|---|---|---|---|---|
| 4/21/08 | Lenz | 0.3 | $350 | Telephone conference with A. Candido re depo scheduling and continuance | $105 |
| 6/18/08 | Piscevich | 0.2 | $450 | Review letter from Ms. Candido & send email to client re: his deposition | $90 |
| 6/26/08 | Piscevich | 0.1 | $450 | Review email from Ms. Candido & send email to Mr. Van Asdale re: his deposition | $45 |
| 6/27/08 | Piscevich | 0.1 | $450 | Reply to email from Ms. Candido re: Shawn's deposition | $45 |
| 7/16/08 | Piscevich | 0.2 | $450 | Review emails (4) from Mr. Glasser & Ms. Candido re: deposition of client | $90 |
| 7/16/08 | Piscevich | 0.2 | $450 | Telephone call with Ms. Candido re: deposition of Mr. Van Asdale | $90 |
| 7/16/08 | Piscevich | 0.1 | $450 | Review letter from Mr. Dilger & send same to client | $45 |
| 7/17/08 | Piscevich | 0.2 | $450 | Review emails from Ms. Candido & Mr. Glasser & reply to same re: Mr. Van Asdale's deposition | $90 |
| 7/21/08 | Piscevich | 8.0 | $450 | Attend & defend deposition of Mr. Van Asdale | $3600 |
| 7/28/08 | Piscevich | 0.1 | $450 | Review email & letter from Ms. Candido | $45 |
| 9/3/08 | Piscevich | 0.4 | $450 | Dictate letter to Amy Candido re documents located | $180 |
| 10/26/09 | Piscevich | 0.2 | $450 | Telephone call with Mr. Peek re: affirmance; call to Ms. Candido | $90 |
| 3/21/10 | Piscevich | 0.5 | $450 | Dictate letter to Candido | $225 |
| 5/5/10 | Piscevich | 0.8 | $450 | Telephone conference with Ms. Candido | $360 |
| 5/5/10 | Piscevich | 0.9 | $450 | Dictate letter to Ms. Candido | $405 |
| **TOTAL:** | | | | | **$16,632** |

Plaintiffs' fee award is reduced by $16,632, resulting in a total of $1,066,144 in fees (calculated by subtracting $16,632 from $1,082,776).

### b. Motion for terminating sanctions

IGT argues Plaintiffs are not entitled to recover fees for 53.9 hours expended on their defense of IGT's motion for terminating sanctions. (Doc. # 339 9.) Plaintiffs argue they may recover these fees because IGT failed to obtain its desired result.  (Doc. # 344 6.)

The court has discretion to exclude fees that are excessive, redundant, or otherwise unnecessary. *See Hensley*, 461 U.S. at 433-34; *Gates*, 987 F.2d at 1397. IGT filed a motion for terminating sanctions against Plaintiffs on August 10, 2006, which Plaintiffs opposed. (Doc. # 135 and # 144.)  The court declined to issue terminating sanctions, but awarded monetary sanctions in the form of counsel's fees for preparing the motion and travel costs for the hearing. (Doc. #149.) IGT sought to recover $39,201.18 in fees and $572.18 in costs. (Doc. # 158.)  Plaintiffs moved to retax the costs and fees incurred by IGT in connection with the motion. (Doc. # 161.) IGT opposed and renewed its motion for terminating sanctions based on further discovery developments. (Doc. # 188.) IGT's renewed motion for terminating sanctions was pending when the court granted summary judgment as to Plaintiffs' SOX claim. After the appellate court reversed and remanded the matter, IGT renewed its request for terminating sanctions, and revisited the dispute as to the amount of monetary sanctions awarded against Plaintiffs.  (Doc. # 225.)  The court denied IGT's renewed request for terminating sanctions. (Doc. # 233 and # 234.) The court ordered IGT was entitled to recover $9,449.33 in fees and $512.18 in costs in connection with the original motion for terminating sanctions. (Doc. # 246.)

The court finds that the hours expended by Plaintiffs' counsel in connection with IGT's motion for terminating sanctions were not excessive, unnecessary, or redundant, and declines to reduce the fee award on this ground.  While IGT was successful in obtaining monetary sanctions against the Plaintiffs, the court did not issue terminating sanctions. In addition, the

18

1   court denied the renewed request for terminating sanctions, and reduced the fees requested

2   by IGT from $39,201.18 to $9,449.33. With this in mind, the court cannot conclude that the

3   time spent by Plaintiffs' counsel in these endeavors was unreasonable.

4   ### c. Hours related to appeals

5   IGT argues that the fees incurred in connection with appeals are not allowed because

6   Plaintiffs failed to request such fees from the circuit. (Doc. # 344 9-10.) Plaintiffs argue that

7   the mandatory phrase "litigation expenses" under SOX distinguishes it from the requirement

8   that fees on appeal be requested from the circuit under a statute such as 42 U.S.C. § 1988,

9   where the award of costs and fees is discretionary. (Doc. # 344 7-8.)

10   At issue is whether Plaintiffs were required to request fees incurred in connection with

11   the appeals directly from the Clerk of the Ninth Circuit in the first instance. Ninth Circuit Rule

12   39-1.6 provides that a request for attorney's fees must be filed with the circuit clerk within

13   fourteen days from the expiration of the period within which a petition for rehearing may be

14   filed. *See* Circuit Rule 39-1.6, 1.8. If a petition for rehearing is filed, a request for attorney's

15   fees must be filed with the circuit clerk within fourteen days after the court's disposition of the

16   petition. *Id.* The circuit rules allow for the transfer of a fees-on-appeal request to the district

17   court for consideration, but "the decision to permit the district court to handle the matter rests

18   with the court of appeals." *Cummings v. Connell*, 402 F.3d 936, 948 (9th Cir. 2005), *as*

19   *amended* April 17, 2005.

20   The case law on this topic appears to be somewhat unsettled in the Ninth Circuit.

21   *Cummings* involved a class action brought pursuant to 42 U.S.C. § 1983, and a request for

22   attorneys' fees under § 1988. *Cummings*, 402 F.3d at 940-41. The district court awarded costs

23   and fees to the plaintiffs as prevailing party, including fees and costs incurred on appeal. *Id.*

24   at 942. In the second paragraph of the opinion, the Ninth Circuit clearly states, "pursuant to

25   Ninth Circuit Rule 39-1.6, a request for attorney's fees incurred on appeal must be made to

26   us, not to the district court. The district court is not authorized to award attorney's fees for

27   an appeal unless we transfer the fee request to the district court for consideration." *Id.* at 940.

28

1       Just seven months later, in *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429

2  F.3d 869 (9th Cir. 2005), the Ninth Circuit affirmed an award of attorney's fees pursuant to

3  17 U.S.C. § 505, for work done on appeal. There, the district court granted Twentieth Century

4  Fox's motion for summary judgment, and its motion for attorney's fees. *Id.* at 875. Dalstar,

5  the losing party, appealed the summary judgment ruling, and the Ninth Circuit affirmed

6  judgment on the Lanham Act claim, and reversed and remanded the copyright claims. *Id.*

7  Dalstar also appealed the fee award, and the Ninth Circuit rejected the arguments that the fee

8  request was not adequately documented and that the rates were excessive, but vacated and

9  remanded the award pending resolution of the copyright claims. *Id.* The parties proceeded

10  with a bench trial on the copyright claims, and Twentieth Century Fox prevailed. *Id.* The

11  district court once again granted the motion for attorneys' fees. *Id.* Dalstar appealed, and the

12  Ninth Circuit considered whether the district court abused its discretion in awarding the fees

13  on appeal of the summary judgment motion. *Id.* at 884. Dalstar, relying on Ninth Circuit

14  Rules 39-1.6 and 39-1.8, argued that the district court was without jurisdiction to award the

15  fees because Twentieth Century Fox did not first file an application with the Clerk of the Ninth

16  Circuit. *Id.*

17       Relying on *Cabrales v. Los Angeles*, 935 F.2d 1050 (9th Cir. 1991), the Ninth Circuit

18  found that the district court did not abuse its discretion in awarding the fees on appeal.

19  *Twentieth Century Fox*, 429 F.3d at 884. The Ninth Circuit pointed out that *Cabrales* involved

20  a fee award under 42 U.S.C. § 1988, and the plaintiffs were compensated for attorneys' fees

21  on appeal because the work "contribute[d] to the ultimate victory in the lawsuit." *Id.* (quoting

22  *Cabrales v. Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991) (internal quotations and citaton

23  omitted). Interestingly, the holding in *Cummings*, issued seven months earlier, was not

24  mentioned.

25      In *Natural Resources Defense Council, Inc. v. Winter*, 543 F.3d 1152 (9th Cir. 2008),

26  the Natural Resources Defense Council (NRDC) was successful in obtaining a TRO enjoining

27  the U.S. Navy from using mid-frequency sonar during training exercises, and subsequently

28

1  reached a settlement. *Winter*, 543 F.3d at 1154-55. NRDC filed a motion for attorneys' fees and

2  costs for work done in the district court and appeal under the EAJA, 28 U.S.C. § 2412. *Id.* The

3  district court granted the motion. *Id.* On appeal, the Navy challenged, among other things, the

4  court's award of attorneys' fees to NRDC for hours spent preparing the appeal of the TRO. *Id.*

5  at 1158. The Navy relied on Ninth Circuit Rules 39-1.6 and 39-1.8 and the decision in

6  *Cummings. Id.* at 1164. The Ninth Circuit recognized its holding in *Cummings*, that appellate

7  fees requested pursuant to 42 U.S.C. § 1988 must be filed with the Clerk of the Ninth Circuit

8  in the first instance, and not with the district court. *Id.* (citing *Cummings*, 402 F.3d at 947-48).

9  The court also pointed out the result reached in *Twentieth Century Fox*, affirming an award

10  for work done on appeal. *Id.* Ultimately, in *Winter*, the Ninth Circuit concluded that the fee

11  award was properly filed in the district court, reasoning:

> [t]he EAJA, however, unlike the fee-shifting statutes- 28 U.S.C. § 1988 and 17
> U.S.C. § 505- states that 'a court shall award to a prevailing party other than the
> United States fees and other expenses...incurred by that party in any civil
> action...brought by or against the United States *in any court* having jurisdiction
> of that action.

14  *Id.* (quoting 28 U.S.C. § 2412(d)(1)(A)) (emphasis in original in opinion, not in statute) (internal

15  quotations omitted). The court went on to conclude that "the plain language of the statute

16  indicates that the district court may properly award fees for *all* levels of litigation." *Id.*

17  (emphasis original) (citation omitted). To the extent the Ninth Circuit rules were inconsistent,

18  the EAJA was controlling. *Id.* at 1164 (internal quotations and citation omitted). Finally, the

19  court found that like the fee award affirmed in *Twentieth Century Fox*, these fees contributed

20  to the ultimate victory in the lawsuit. *Id.* (citing *Twentieth Century Fox*, 429 F.3d at 884).

21      Because *Winter* relies primarily on the language of the EAJA in finding that fees on

22  appeal may be sought from the district court in the first instance, it does not resolve the

23  discrepancy between *Cummings* and *Twentieth Century Fox*. Upon further examination of

24  *Cummings, Twentieth Century Fox, Winter*, and *Cabrales*, the court finds Plaintiffs were

25  required to request fees from the Ninth Circuit in the first instance because: (1) unlike *Winter*,

26  the plain language of SOX does not indicate that the district court may properly award fees for

27

28                                                    21

1  all levels of litigation; and (2) *Twentieth Century Fox,* insofar as it is based on *Cabrales,* is

2  inapposite.

3                  *i. SOX does not provide for an award of fees at all levels of litigation*

4        *Winter* involved a fee request under the EAJA. The EAJA provides: "Except as otherwise

5  specifically provided by statute, a court shall award to a prevailing party...fees and other

6  expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party

7  in any civil action...brought by or against the United States in *any court* having jurisdiction of

8  that action..." 28 U.S.C. § 2412(d)(1)(A) (emphasis added).  *Winter* focuses on the language

9  "in any court" in holding that the district court properly awarded fees on appeal in the first

10  instance.

11        A whistleblower under SOX has two options for seeking relief: (1) filing a complaint with

12  the Secretary of Labor; or (2) if the Secretary has not issued a final decision within 180 days,

13  bring an action in the district court. 18 U.S.C. § 1514A(b)(1).  If successful in either of these

14  proceedings, the employee is entitled to:

15          all relief necessary to make the employee whole. This relief shall include--
        (A) reinstatement with the same seniority status that the employee would

16          have had, but for the discrimination; (B) the amount of back pay, with
        interest; and (C) compensation for any special damages sustained as a

17          result of the discrimination, including litigation costs, expert witness fees,
        and reasonable attorney fees.

18  18 U.S.C. § 1514A(c).

19        Unlike the EAJA, SOX does not specifically provide for the recovery of fees and expenses

20  incurred in an action brought in "any court" having jurisdiction of the action. Instead, SOX

21  specifically states that the remedies are available to "[a]n employee prevailing in any action

22  under subsection (b)(1)" -a complaint with the Secretary of Labor or an action in the district

23  court.  This weighs in favor of finding that Plaintiffs were required to request fees from the

24  appellate court in the first instance.

25                  *ii. Twentieth Century Fox is inapposite*

26        In its determination that fees on appeal were properly awarded by the district court,

27  *Twentieth Century Fox* relies on *Cabrales.* In *Cabrales,* the plaintiff won her civil rights lawsuit

28                        22

1    and was awarded a $150,000 jury verdict. *Cabrales,* 935 F.2d at 1051. She moved for attorney's

2    fees under § 1988 and was awarded fees. *Id.* The county appealed the verdict and fees award.

3    *Id.* The Ninth Circuit affirmed, and subsequently awarded her attorney's fees on appeal. *Id.*

4    The county filed a petition for certiorari to the U.S. Supreme Court. *Id.* The Supreme Court

5    granted the petition, vacated the judgment and remanded for further consideration in light of

6    a recent case. *Id.* On remand, the Ninth Circuit considered the new case, found it inapposite,

7    reinstated the original decision, and affirmed the district court's judgment. *Id.*

8         The county filed a second petition for certiorari, which was denied. *Cabrales,* 935 F.2d

9    at 1051. Cabrales moved the Supreme Court for attorney's fees incurred in opposing both

10   petitions for certiorari, which the Supreme Court denied without prejudice to be renewed in

11   the district court. *Id.* at 1051-52. Cabrales did so, and the district court awarded her fees on

12   the second petition (which had been denied), but nothing on the first (which had been granted).

13   *Id.* at 1052. Cabrales appealed the district court's denial of fees incurred in opposing the first

14   petition for certiorari. *Id.*

15        The Ninth Circuit, interpreting *Hensley v. Eckerhart,* 461 U.S. 424 (1983), stated that

16   *Hensley* "establish[ed] the general rule that plaintiffs are to be compensated for attorney's fees

17   incurred for services that contribute to the ultimate victory in the lawsuit. Thus even if a specific

18   claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes

19   to the success of other claims." *Cabrales,* 935 F.2d at 1052 (citation omitted). *Cabrales* also

20   referenced the holding in *N.A.A.C.P. v. City of Richmond,* 743 F.2d 1346 (9th Cir. 1984), in

21   finding, "[i]f a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees

22   reasonable expended in pursuing that claim- even though she may have suffered some adverse

23   rulings." *Id.* at 1052-53.

24        Here, the court is not saying that Plaintiffs would not be entitled to recover fees and costs

25   on appeal if they were properly requested. Instead, the court finds that Plaintiffs should have

26   requested the fees incurred on appeal in the Ninth Circuit in the first instance, or that they

27   should have sought a transfer of the request to the district court. This was not the question

28                                          23

posed in *Cabrales*, and therefore it is distinguishable.  Cabrales brought the request for fees concerning the petition for certiorari to the Supreme Court and the Supreme Court remanded the request for fees on the certiorari petition that had been granted to the district court. *Cabrales*, 935 F.2d at 1051-52. With respect to the fees that Cabrales had sought on appeal (as compared to those in connection with the petition for certiorari), Cabrales sought and was awarded those fees by the Ninth Circuit. *Id.* at 1051.

  In sum, nothing in SOX indicates that this court has jurisdiction to entertain the request for fees and costs in the first instance, as was the case with the EAJA. In addition, *Cabrales*, on which *Twentieth Century Fox* relies, is distinguishable. The court finds that the holding in *Cummings* applies to this case.

  Plaintiffs do not indicate that they made any requests for fees from the circuit court or that they filed a motion to transfer consideration of attorney's fees on appeal.  The court recognizes that this may have been an oversight, and that this oversight is met with harsh results; however, the court is without authority to award any appellate fees. Therefore, the court finds that the Plaintiffs are not entitled to attorneys' fees incurred in the course of the appeal. The court finds that the following hours were related to the appeal and will reduce Plaintiffs' award of attorneys' fees accordingly:

| Date | Lawyer/ Paralegal | Hours | Rate | Description | Total |
|---|---|---|---|---|---|
| 6/3/05 | Piscevich | 0.2 | $450 | Telephone call with Mr. Herb (clerk of court) re: appeal | $90 |
| 2/2/06 | Piscevich | 0.2 | $450 | Telephone call from Ms. Mills of 9th Circuit | $90 |
| 2/27/06 | Piscevich | 0.1 | $450 | Review order from 9th Circuit | $45 |
| 5/1/06 | Piscevich | 0.1 | $450 | Review letter from Ms. Candido to 9th Circuit | $45 |
| 3/8/09 | Piscevich | 2.5 | $450 | Begin review for oral argument | $1,125 |
| 3/9/09 | Piscevich | 0.1 | $450 | Review & reply to email from clerk of court changing time of oral argument | $45 |

| 3/9/09 | Piscevich | 5.5 | $450 | Continue with review of documents & file to prepare for oral argument | $2,475 |
|---|---|---|---|---|---|
| 3/10/09 | Piscevich | 3.5 | $450 | Continue with preparation for oral argument | $1,575 |
| 3/11/09 | Piscevich | 3.0 | $450 | Continue with review of file & work on argument | $1,350 |
| 3/11/09 | Piscevich | 3.5 | $450 | Travel from Reno to San Francisco & to hotel & review cases in flight | $1,575 |
| 3/11/09 | Piscevich | 1.0 | $450 | Continue with case review & outline | $450 |
| 3/12/09 | Piscevich | 2.0 | $450 | Attend argument at 9th Circuit | $900 |
| 3/12/09 | Piscevich | 3.0 | $450 | Return from San Francisco to Reno | $1,350 |
| 9/22/05 | Piscevich | 0.1 | $450 | Letter to Van Asdale with copy of Opening Brief of Appellant International Game Technology | $45 |
| 3/10/09 | Fenner | 1.2 | $350 | Participate in preparation for oral argument before 9th Circuit | $420 |
| 6/2/05 | Lenz | 2.5 | $350 | Receive and review Notice of Appeal; legal analysis re appealable interlocutory orders; correspondence to R. Campbell re Notice of Appeal | $875 |
| 6/20/05 | Lenz | 6.5 | $350 | Legal analysis and draft Motion to Dismiss appeal | $2,275 |
| 7/12/05 | Lenz | 2.5 | $350 | Review Opposition to Motion to Dismiss Appeal; legal analysis and commence draft Reply in support | $875 |
| 7/13/05 | Lenz | 4.5 | $350 | Continued legal analysis and draft Reply in Support of Motion to Dismiss Appeal; arrange for filing and service | $1,575 |
| 7/25/05 | Lenz | 7.5 | $350 | Legal analysis and draft Opposition to Motion for Stay (9th Cir.) proof and revise to final form; arrange for filing and service | $2,625 |
| 8/8/05 | Lenz | 0.3 | $350 | Receive and Review IGT's Reply in support of motion for stay | $105 |
| 8/16/05 | Lenz | 1.0 | $350 | Telephone conference with D. Lombardi re 9th Circuit settlement conference | $350 |
| 9/20/05 | Lenz | 2.0 | $350 | Receive and review IGT's opening | $700 |

| | | | | | |
|---|---|---|---|---|---|
| | | | | Brief; commence legal analysis of Answering brief | |
| 9/21/05 | Lenz | 0.5 | $350 | Legal analysis re briefing and motion to dismiss appeal | $175 |
| 5/10/06 | Lenz | 0.5 | $350 | Fact Investigation/ Development- receive and review IGT Motion to Seal Documents in 9th Cir. | $175 |
| 5/10/06 | Lenz | 2.0 | $350 | Appellate Motions and Submissions- legal analysis and draft Opposition to Motion to Place Appellate Record Under Seal | $700 |
| 8/22/07 | Lenz | 3.0 | $350 | Appellate Motions and Submissions- legal analysis and prepare Notice of Appeal, Docketing Statement and Statement of issues | $1,050 |
| 8/24/07 | Lenz | 1.5 | $350 | Prepare representation statement; review and revise issues statement; email to S. Van Asdale | $525 |
| 8/31/07 | Lenz | 1.0 | $350 | Review and revise Issues statement for appeal | $350 |
| 8/31/07 | Lenz | 0.5 | $350 | Proof and revise Notice of Appeal; e-file Notice of Appeal | $175 |
| 9/10/07 | Lenz | 1.0 | $350 | Receive and review Time Scheduling Order; proof and revise Docketing Statement for filing; prepare transcript designation | $350 |
| 11/19/07 | Lenz | 6.5 | $350 | Continued draft Opening Brief; review Excerpts of Record | $2,275 |
| 12/6/07 | Lenz | 1.0 | $350 | Commence outline of Opening brief on Appeal; prepare for conference with S. Van Asdale | $350 |
| 12/6/07 | Lenz | 1.5 | $350 | Prepare for and attend conference with S. Van Asdale re appeal brief | $525 |
| 12/7/07 | Lenz | 1.5 | $350 | Commence draft outline for Opening Brief on Appeal | $525 |
| 12/10/07 | Lenz | 4.5 | $350 | Continued outline of Opening Brief on Appeal; review 9th Cir. Rules re Excerpts of Record | $1,575 |
| 12/11/07 | Lenz | 1.5 | $350 | Continued drafting Opening Brief on Appeal | $525 |
| 12/12/07 | Lenz | 1.0 | $350 | Continued draft Opening Brief | $350 |

26

| 12/13/07 | Lenz | 2.5 | $350 | Continued draft Opening Brief | $875 |
| 12/15/07 | Lenz | 4.0 | $350 | Continued draft Opening Brief on Appeal | $1,400 |
| 12/17/07 | Lenz | 5.0 | $350 | Continued draft Opening Brief | $1,750 |
| 12/17/07 | Lenz | 2.0 | $350 | Continued legal analysis and draft of Opening Brief on Appeal | $700 |
| 12/17/07 | Lenz | 2.0 | $350 | Continued legal analysis and draft argument for Opening Briefs | $700 |
| 12/18/07 | Lenz | 1.0 | $350 | Legal analysis and draft Motion to release Docket sheet | $350 |
| 12/20/07 | Lenz | 6.5 | $350 | Continued legal analysis and draft of opening brief | $2,275 |
| 12/21/07 | Lenz | 3.5 | $350 | Complete draft Opening Brief on Appeal | $1,225 |
| 12/26/07 | Lenz | 4.5 | $350 | Proof and revise Opening Brief on Appeal; review Excerpts of Record | $1,575 |
| 1/4/08 | Lenz | 0.5 | $350 | Legal analysis and correct Opening Brief on Appeal | $175 |
| 2/18/08 | Lenz | 2.5 | $350 | Commence review and analysis of IGT Answering Brief on Appeal | $875 |
| 2/19/08 | Lenz | 2.5 | $350 | Continued legal analysis for Reply Brief | $875 |
| 2/25/08 | Lenz | 5.0 | $350 | Continued legal analysis and draft Reply brief | $1,750 |
| 2/26/08 | Lenz | 8.0 | $350 | Complete draft Reply Brief on Appeal | $2,800 |
| 2/27/08 | Lenz | 3.5 | $350 | Complete draft Reply Brief on Appeal | $1,225 |
| 2/28/08 | Lenz | 1.0 | $350 | Proof and revise to final form Reply Brief on Appeal; arrange for filing and service | $350 |
| 1/21/09 | Lenz | 0.5 | $350 | Receipt and review of Notice of Oral Argument; email to S Van Asdale re Notice; telephone conference with S. Van Asdale re oral argument | $175 |
| 2/19/09 | Lenz | 2.0 | $350 | Legal analysis re IGT supplemental authority | $700 |
| 2/20/09 | Lenz | 2.0 | $350 | Commence outline for oral | $700 |

| | | | | argument | |
|---|---|---|---|---|---|
| 3/6/09 | Lenz | 2.5 | $350 | Continued review of cases and briefing for oral argument | $875 |
| 3/9/09 | Lenz | 2.0 | $350 | Continued analysis and preparation for oral argument | $700 |
| 3/10/09 | Lenz | 4.5 | $350 | Continued preparation of argument for oral argument | $1,575 |
| 3/11/09 | Lenz | 2.0 | $350 | Continued preparation for oral argument; review issues and questions anticipated | $700 |
| 3/12/09 | Lenz | 1.5 | $350 | Review and analysis re oral argument and standard of review for affidavit | $525 |
| 9/9/09 | Lenz | 0.5 | $350 | Prepare and file Bill of Costs | $175 |
| 1/9/08 | Lenz | 1.0 | $350 | Telephone conference with 9th Cir. Clerk re Excerpts of Record; review and revise Volume 1; arrange for re-filing | $350 |
| 12/26/07 | Stark | 2.2 | $120 | Support and preparation of documents for reproduction for 9th Circuit; meet with documents at Total Image re reproduction, copies, covers, binding | $264 |
| 12/27/07 | Stark | 2.5 | $120 | Continued support and preparation for motion and exhibits for 9th Circuit; deliver additional documents for reproduction; meet w/ Total Image regarding additional copies, covers; return completed copies to office; prepare for shipment | $300 |
| TOTAL: | | | | | $56,524 |

Plaintiffs' fee award is now reduced to $1,009,620 (calculated by subtracting $56,524 from $1,066,144).

### d. Hours related to dismissed OSHA complaint

IGT argues Plaintiffs' fee award should be reduced by 127.8 hours expended in connection with the OSHA complaint that was voluntarily withdrawn. (Doc. # 339 10-11.)

1  Plaintiffs maintain that they should be able to recover these fees because SOX requires the case

2  be commenced with OSHA. (Doc. # 344 8.)

3      SOX requires the filing of a complaint before the Secretary of Labor before a complaint

4  can be filed in district court. 18 U.S.C. § 1514A(b)(1). Moreover, SOX provides relief for an

5  employee prevailing in an action brought pursuant to 18 U.S.C. § 1514A(b)(1), which includes

6  a proceeding before the Secretary of Labor as well as before the district court. *Id*. Since 18

7  U.S.C. § 1514A(c) specifically refers to subsection (b)(1), and does not limit the recovery of fees

8  to those incurred in connection with the action filed in the district court, the court finds

9  Plaintiffs are entitled to recover reasonable attorneys' fees incurred in pursuing the complaint

10  before the Secretary of Labor.

11      **e. Hours related to non-testifying expert Chris Comuntzis**

12      IGT argues Plaintiffs' fee award should be reduced by 37 hours for time expended in

13  connection with expert Chris Comuntzis, who did not testify at trial. (Doc. # 339 11.) Plaintiffs

14  assert that they may recover these fees because IGT continually asserted that to prove

15  shareholder fraud, Plaintiffs had to establish that the Australian Flyer was material, and this

16  was the purpose for engaging Mr. Comuntzis. (Doc. # 344 8-9.)

17      It is undisputed that SOX allows the prevailing party to recover expert witness fees as

18  damages. *See* 18 U.S.C. § 1514A(c). The court is not aware of any case determining whether

19  expert fees are allowed under SOX for an expert who did not testify at trial, and neither party

20  cites any legal authority in support of their position. SOX does not specifically limit the

21  recovery of expert witness fees to those witnesses who were called at trial. Moreover, the court

22  cannot conclude that the fees associated with Mr. Comuntzis are excessive or unnecessary.

23  According to Plaintiffs' counsel, Mr. Comuntzis was designated as an expert, testified in

24  deposition, was listed as an expert witness for trial, and was on standby to appear for trial.

25  (Doc. # 344-1 at ¶ 6.) Plaintiffs ultimately made a strategic decision not to call Mr. Comuntzis

26  as a witness at trial. (*Id*.) Given the broad language of SOX that Plaintiffs are "entitled to all

27  relief necessary to make [them] whole," including "litigation costs" and "expert witness fees,"

28

29

1     the court finds that Plaintiffs are entitled to recover the fees and costs incurred in connection

2     with Mr. Comuntzis, even though he ultimately was not called to testify at trial.

3                  **f.  Hours for Ms.  Fenner**

4         IGT attacks the hours expended by Ms. Fenner on the ground that Plaintiffs failed to

5     provide the necessary documentary support for any time spent by Ms. Fenner. (Doc. # 339

6     11.) Plaintiffs assert that requesting Ms. Fenner's hours is reasonable because during trial, IGT

7     had three counsel at counsel table, one or two other attorneys in court, along with one or more

8     paralegals, and a trial consultant. (Doc. # 344 9.)

9         The court reminds Plaintiffs that the number of attorneys and other professionals IGT

10     had at trial is irrelevant to *Plaintiffs'* motion for fees.  Nonetheless, the court does not find the

11     hours expended by Ms. Fenner were unnecessary, redundant, or excessive, and declines to

12     reduce the fee award by this amount. Ms. Fenner's time will be included in the fee award at

13     the hourly rate of $350, as determined above.

14             **g.  Hours for unrelated or ambiguous items**

15         IGT contends that the following billing entries appear to be either unrelated or

16     ambiguous and as a result, 46.65 hours should be cut from Plaintiffs' fee award: 9/2/04;

17     3/4/06; 6/12/06; 6/29/06; 11/3/06; 1/3/07; 1/17/07; 2/20/07 (2); 9/2/08; 9/9/09; 9/15/09;

18     9/21/09; 10/15/09; 11/17/09 (2); 11/18/09; 11/20/09; 3/12/10; 3/13/10; 3/15/10; 3/10/10;

19     5/7/10; 12/7/10; 12/28/10; 1/7/11; 1/9/11 (2); and 1/13/11.

20         If the prevailing party fails to submit adequate documentation in support of the hours

21     expended, the court may reduce the award. *Hensley*, 461 U.S. at 433.  In *Hensley*, the Supreme

22     Court observed, "counsel, of course, is not required to record in great detail how each minute

23     of his time was expended. But at least counsel should identify the general subject matter of

24     his time expenditures." *Hensley*, 461 U.S. at 437 n. 12, 433.  The court has reviewed the billing

25     entries attacked by IGT and finds that none are ambiguous, and all appear to be related to this

26     matter. (*See* Doc. # 323 Ex. 1.)  Therefore, the court will not reduce Plaintiffs' fee award on

27     this basis.

28

### 5. Conclusion on Fees

Plaintiffs are entitled to recover $1,009,620 in fees. This is calculated by taking the amount of Plaintiffs' fee request, $1,237,956, and adjusting the hourly rates of Mr. Lenz and Ms. Fenner to $350, for a total of $1,082,776. The court then reduced the fees to account for the hours expended on the *Bally* litigation ($16,632) and on appeal ($56,524).

### B.     COSTS

It is undisputed that SOX allows a prevailing employee to recover litigation costs. 18 U.S.C. §1514A(c)(1)(C). Plaintiff seek $135,358.85 in costs. (Pl.'s Bill of Costs (Doc. # 324).) IGT objects on the following grounds: (1) costs should be reduced to account for Plaintiffs' limited success; (2) Plaintiffs cannot recover costs on appeal; (3) costs related to non-testifying expert Chris Comuntzis should be excluded; (4) Plaintiffs are not entitled to specific costs related to their unsuccessful state law claims; and (5) Plaintiffs cannot recover costs for unsubstantiated in-house copies. (Doc. # 339 16-18.)

### 1.     Costs and Plaintiffs' Success

IGT argues Plaintiffs' costs should be reduced by 50% to reflect Plaintiffs' limited success. (Doc. # 339 16, 18.) As set forth above, the court declines to exercise its discretion to reduce Plaintiffs' fees and costs on this ground. (*See supra* at III.A.3.)

### 2.     Costs on Appeal

IGT requests that Plaintiffs' costs be reduced by $521.91, for those costs incurred for travel to and from a Ninth Circuit hearing. (Doc. # 339 16.)

As set forth above, Plaintiffs were required to request fees and costs on appeal with the Clerk of the Ninth Circuit in the first instance. (*See supra* at III.A.4(iii).) To the extent Plaintiffs did request costs from the Ninth Circuit, and were denied, the court finds their request is improper for this reason as well. Accordingly, Plaintiffs' costs are reduced to $134,836.94 (calculated by subtracting $521.91 from $135,358.85).

### 3.   Costs Related to Non-Testifying Expert Chris Comuntzis

IGT argues Plaintiffs' costs bill should be reduced by $63,245.02 for those costs associated with expert Chris Comuntzis, who did not testify at trial, and therefore was unnecessary and excessive. (Doc. # 339 16-17.)

For the reasons set forth above concerning the fees incurred in connection with Mr. Comuntzis, the court finds Plaintiffs are entitled to these costs.

### 4.   Costs Related to Unsuccessful State Law Claims

IGT argues that Plaintiffs' costs bill should be reduced by $515.05-those costs associated with medical expenses related to their unsuccessful state law claim for intentional infliction of emotional distress. (Doc. # 339 17.) The court has determined that Plaintiffs' claims involve a common core set of facts and are based on related legal theories, and therefore, Plaintiffs are entitled to recover these costs.

### 5.   Costs for Unsubstantiated In-House Copies

IGT argues Plaintiffs' costs should be reduced by $2,883.00, for unsubstantiated in-house copying costs. (Doc. # 339 17.) Plaintiffs argue that they are entitled, as a matter of law, to recover their litigation expenses. (Doc. # 344 16.)

While Plaintiffs are entitled to litigation costs as the prevailing party under SOX, they must document or otherwise substantiate their litigation costs. Without this information, the court has no way to determine whether the copying costs were in fact incurred. The court will not blindly rely on a reference to a number incurred for in-house copying costs without some sort of documentation or declaration to support the request. Since Plaintiffs failed to properly document their request for $2,883 of in-house copying costs, the court will reduce their costs award accordingly.  Plaintiffs costs are reduced to $131,953.94 (calculated  by subtracting $2,883 from $134,836.94).

### 6.   Conclusion on Costs

Based on the foregoing and the court's review of the costs bill, the court finds that Plaintiff is entitled to recover $131,953.94 in costs reasonably incurred. This is calculated by

1    taking Plaintiffs' request in the amount of $135,358.85 and subtracting costs on appeal

2    ($521.91) and unsubstantiated in-house copying charges ($2,883).

3    **C.    PREJUDGMENT INTEREST**

4        IGT argues that Plaintiffs should not be awarded prejudgment interest because their

5    damages were primarily comprised of their lost value of unvested stock options. (Doc # 339

6    18.) Alternatively, IGT appears to argue that any computation of prejudgment interest should

7    not include stock options at all. (*Id.* at 19.) Plaintiffs counter that the jury awarded each of

8    them "actual damages" with no categorization, and Plaintiffs are entitled to prejudgment

9    interest to make them whole. (Doc. # 344 17-18.)

10        While IGT argues that Plaintiffs' damages were primarily comprised of their lost value

11   of unvested stock options so that prejudgment interest should not be awarded, the court cannot

12   come to this conclusion. Plaintiffs are correct in pointing out that the jury awarded Plaintiffs

13   actual damages, without categorization. While the amount of actual damages awarded to

14   Shawn Van Asdale appears to reflect the amount offered by Plaintiffs' expert at trial for his

15   unvested stock options, the court cannot now substitute its judgment for that of the jury in

16   determining what amount of the total damages award is allocated to each category of damages

17   sought by Plaintiffs. Moreover, with respect to Lena Van Asdale, IGT's opinion that her

18   damages are primarily comprised of the lost value of unvested stock options is entirely

19   speculative because the jury simply awarded her actual damages in the amount of $1,270,303,

20   without categorizing her damages. The court will not entertain IGT's request to guess which

21   portion of the jury's damages award is comprised of the lost value of unvested stock options,

22   especially when IGT did not object to the verdict form.

23        Plaintiffs, as prevailing party, are entitled to recover prejudgment interest as part of the

24   backpay remedy under Sox. 18 U.S.C. § 1514A(c)(B). "Prejudgment interest, of course, is an

25   element of complete compensation." *Loeffler v. Frank*, 486 U.S. 549, 558 (1988) (internal

26   quotation marks and citation omitted) (finding that Title VII authorizes prejudgment interest

27   as part of backpay remedy in suits against private employers). It "serves to compensate for

28                                                                33

1   the loss of use of money due as damages from the time the claim accrues until judgment is

2   entered." *West Virginia v. United States*, 479 U.S. 305,311 fn. 2 (1987)(citation omitted).

3   Given the SOX's specific reference to an award of prejudgment interest and the direction that

4   Plaintiffs, as prevailing party, be awarded all relief necessary to make them whole, 18 U.S.C.

5   § 1514A(c), the court finds Plaintiffs are entitled to an award of prejudgment interest.

6        The court agrees with Plaintiffs that prejudgment interest on backpay awarded should

7   be calculated in accordance with 29 C.F.R. §20.58(a), at the rate specified in the Internal

8   Revenue Code, 26 U.S.C. § 6621. Generally, the underpayment rate is the sum of the Federal

9   short-term rate plus 3 percentage points.  26 U.S.C. § 6221(a)(2).  A "large corporate

10  underpayment" is "any underpayment of a tax by a C corporation for any taxable period if the

11  amount of such underpayment for such period exceeds $100,000." 26 U.S.C. § 6621(c)(3)(A).

12  For large corporate underpayments, the rate is the Federal short-term rate plus 5 percentage

13  points. 26 U.S.C. § 6621(c). IGT does not dispute that the large corporate underpayment rate

14  applies, as Plaintiffs suggest.  The Federal short-term rate is "rounded to the nearest full

15  percent (or, if a multiple of 1/2 of 1 percent, such rate shall be increased to the next highest

16  full percent)." 26 U.S.C. § 6621(b)(3).

17       In the absence of any objection by IGT that the large corporate underpayment rate

18  applies, the court finds that prejudgment interest in this matter is calculated using the Federal

19  short-term rate, plus 5 percentage points. 26 U.S.C. § 6621(c)(3)(A). The court takes judicial

20  notice of the Federal short-term rates and adds 5 percentage points for a large corporate

21  underpayment, as set forth in Exhibit 7 to Plaintiffs' motion. (Doc. # 323 Ex. 7.)

22       Plaintiff Shawn Van Asdale is awarded prejudgment interest from his termination date

23  of February 11, 2004, until the date judgment was entered, February 9, 2011, in the amount of

24  $552,418.62. Plaintiff Lena Van Asdale is awarded prejudgment interest from her terminate

25  date of March 15, 2004, until the date judgment was entered, February 9, 2011, in the amount

26  of $723,347.90.

27  / / /

28

**D.    TOTAL CALCULATION**

In sum, the court finds that the total amount of attorneys' fees awarded is $1,009,620. The total amount of costs awarded is $131,953.94. The total amount of prejudgment interest awarded is $1,275,766.50 ($552,418.62 to Shawn and $723,347.90 to Lena). Therefore, the total award of attorneys' fees, costs, and prejudgment interest is $2,417,340.40.

The court orders IGT to pay the amount of $2,417,340.40 to Plaintiffs no later than thirty (30) days from the date of this order.

### IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Attorneys' Fees, Costs, and Prejudgment interest (Doc. #323-327) is **GRANTED** as set outlined above.

**IT IS HEREBY FURTHER ORDERED** that Plaintiffs' Motion to Strike (Doc. #354) is **DENIED**.

DATED:  May 24, 2011.

UNITED STATES MAGISTRATE JUDGE